WILSON, Appellant,

v.

LYNCH AND LYNCH CO., L.P.A., et al., Appellees.

[Cite as *Wilson v. Lynch & Lynch Co., L.P.A.* (1994), 99 Ohio App.3d 760.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

Nos. 93–G–1804, 93–G–1814.

Decided Dec. 27, 1994.

*Neil R. Wilson, pro se,* appellant.

*Robert Best, pro se,* appellee.

*Sandra Davis, pro se,* appellee.

*Matthew J.D. Lynch* and *Ann Dejulius,* for other appellees.

CHRISTLEY, Judge.

This opinion will address the merits of two appeals, each of which has been taken from a separate final judgment of the Geauga County Court of Common Pleas. Prior to being heard, both appeals were placed upon this court's accelerated calendar docket and were consolidated for purposes of briefing and disposition.

In the first appeal, App. No. 93–G–1804, appellant Neil R. Wilson seeks the reversal of the trial court's decision granting summary judgment in favor of appellees, Sandra Davis ("Davis"), Edna Best and Robert Best ("Bests"), Matthew Lynch ("Lynch"), and Lynch & Lynch Co., L.P.A.

In the second, App. No. 93–G–1814, appellees seek review of the court's judgment denying their motion for attorney fees.[1]

Prior to accepting an appointment as a judge in February 1989, appellant was a practicing attorney in Lake County, Ohio. For approximately three of those

---

1. For the sake of clarity, Wilson will be referred to as "appellant" throughout this opinion, even though he is the appellee in App. No. 93–G–1814. The Bests, Davis, Lynch, and the company will be referred to collectively as "appellees." If it is necessary to refer to the Bests, Davis, or Lynch individually, their proper names will be used.

earlier years, appellant represented Sandra Davis and the Bests in certain matters pertaining to the administration of the estate of Walter Best. In November 1988, Davis and the Bests decided to hire a second attorney, Lynch, to assist appellant in bringing an action against the executor of the estate. Approximately one month later, in addition to entering into a contingent fee agreement with Davis and the Bests, Lynch entered into an agreement with appellant as to the splitting of any contingent fee which might result from any action to reduce the amount of attorney and executor fees previously paid to the current executor of the estate. The terms and enforceability of this latter agreement are in dispute.

Upon receiving the judicial appointment, appellant terminated his representation of Davis and the Bests on February 3, 1989, and sent them a final bill for his hourly services. Davis and the Bests paid this bill. As a result, Lynch became sole counsel in the action against the executor.

In November 1990, Lynch negotiated a settlement of that action, under the terms of which the Bests and Davis received the sum of $350,000. However, while Lynch informed appellant of the settlement, he refused to pay appellant one-fourth of the contingent fee which appellant believed was still owed to him.

In July 1992, after voluntarily dismissing his first action against appellees, appellant filed the instant action in the Cuyahoga County Court of Common Pleas.[2] In both his original and amended complaints, appellant asserted claims sounding in breach of contract and fraud. The former claim was predicated upon the following allegations: (1) in December 1988, appellant had entered into a fee agreement with appellees; (2) this agreement was designed to compensate him for past legal services and future legal services pertaining to the estate; and (3) appellees had refused to pay him his share in accordance with the agreement. After the action had been transferred to Geauga County, appellees moved for summary judgment as to both claims.

As grounds for this motion, appellees primarily argued that any agreement between the parties concerning the payment of a contingent fee to appellant was unenforceable because appellant had not rendered any services subsequent to the date that he became a judge, i.e., the agreement was unenforceable because of a lack of consideration.

---

2. Prior to rendering its final judgments in this case, the trial court ordered that the record in the first action between the parties be incorporated into the record of this case. Thus, not only were the various filings in the first action before the trial court when it granted summary judgment in favor of appellees in this case, but those filings are a part of the entire record before this court. Our review of these documents indicates that the first action, which was brought in Geauga County, was voluntarily dismissed by appellant approximately one month before the instant action was filed in Cuyahoga County.

In his response to appellees' motion, appellant maintained that at the time Lynch was added as co-counsel, Davis and the Bests had agreed to pay appellant a part of any contingent fee which would be paid to Lynch from any recovery in the action against the executor.

Appellant further argued that this arrangement had constituted a *novation* of his original fee agreement with Davis and the Bests. According to appellant, the original agreement had consisted of an "understanding" in which Davis and the Bests had agreed to pay him a "fee" for "unbilled legal services" from any recovery obtained by appellant from the executor. In making this argument, appellant did not allege any specifics as to the original "fee," nor was this "fee" designated as a contingent fee.

After appellees had filed a reply brief to appellant's brief in opposition, the trial court issued its decision granting summary judgment in favor of appellees as to both the contract and fraud claims. Approximately two weeks later, appellees moved for attorney fees, arguing that appellant had engaged in frivolous conduct by bringing the action. As part of this motion, appellees requested that a hearing be held on the motion. Once appellant had responded, the trial court denied the motion without a hearing.

I

In App. No. 93–G–1804, appellant has raised one assignment of error for review. Under this assignment, he contends that the trial court erred in granting summary judgment as to both the contract and fraud claims in his amended complaint because the evidentiary materials attached to his response were sufficient to raise a factual issue as to whether consideration existed for the alleged novation. This argument lacks merit.

Prior to addressing the merits of this argument, this court would note that under the contract claim in his amended complaint, appellant specifically referred to only one agreement between the parties. Accordingly, in moving for summary judgment, appellees did not attempt to distinguish between any alleged agreement involving only appellant and Lynch, or, any alleged agreement involving only appellant, Davis, and the Bests. Instead, appellees essentially argued that appellant was not entitled to recover a fee from any of them.

However, in his brief in opposition to appellees' motion, appellant asserted that when Lynch was added as co-counsel, three separate agreements existed among the parties: (1) an agreement between Lynch, Davis, and the Bests as to the contingent fee Lynch would receive for bringing a successful action against the executor; (2) an agreement between Lynch and appellant concerning the splitting of the contingency fee; (3) an agreement between appellant, Davis, and the Bests

providing that appellant would receive one fourth of any contingent fee paid to Lynch in consideration for the unbilled legal services which appellant had rendered in relation to the estate. Appellant further asserted in his brief that he was entitled to recovery under *both* the second and third agreements.

Although appellant did not specifically refer to three separate agreements in his amended complaint, his allegations were still sufficient to place appellees on notice that his contract claim was predicated upon two different "theories" of relief. As was noted above, appellant alleged under his contract claim that appellees had agreed to pay him a portion of the contingent fee to compensate him for both past legal services and future legal services. Thus, in deciding whether summary judgment should have been granted on the contract claim, this court will address both theories.

In moving for summary judgment as to the contract claim, appellees' position was that the basic fee-splitting arrangement had lacked consideration in two respects: (1) appellant did not render any subsequent legal services against the fiduciary; and (2) past services did not constitute consideration.

Although appellees did not attempt to distinguish between the three separate agreements alleged by appellant, their first argument was relevant to the issue of whether the alleged agreement between Lynch and appellant was enforceable. In turn, their second argument was relevant to the issue of the validity of the alleged agreement between appellant, Davis, and the Bests.

Appellant argued in his response to the summary judgment motion that forgiveness of the unspecified fee for the past "unbilled legal services" constituted legally sufficient consideration for the novation which provided a payment of twenty-five percent of any contingent fee collected by Lynch. In support of this argument, he attached his own affidavit to his brief in opposition. This document set forth a chronological statement of the sequence of events:

"2. Affiant had a long-standing attorney-client relationship with Defendants Edna Best, Robert Best and Sandra Best (hereinafter referred to as 'the Best family') in a wide range of legal matters including financial and legal advice, individual estate planning and the preparation of documents pertaining thereto;

"3. One of the legal matters for which the Best family consulted [appellant] pertained to their dissatisfaction with the handling of the Estate of Walter Best by the Estate's fiduciary;

"4. An understanding existed between [appellant] and the Best family that when monies were recouped from or on behalf of the fiduciary of the Estate of Walter Best as a result of the fiduciary's misfeasance or malfeasance, [appellant] would be entitled to a fee from that specific recovery *for unbilled legal services provided to the Best family over a period of years pertaining to the estate;*

" * * * *

"7. The letters of 12–01–88 and 12–15–88 constitute a contract containing three separate and distinct agreements;

"8. One of the agreements was a *novation* of the oral contract [appellant] had with the Best Family *regarding payment of legal fees on a contingent fee basis for the recovery of funds wrongfully paid to the fiduciary of the Estate of Walter Best * * *.*" (Emphasis added.)

Considered as a whole, the averments in appellant's affidavit alleged that at some unspecified point prior to the date upon which Lynch was retained as co-counsel, he had reached "an understanding" with Davis and the Bests that should actual litigation result over the issue of excess executor and attorney fees, he would be paid a fee[3] from the recovery for "unbilled legal services."

Section four of appellant's affidavit makes it clear that the only source for fees for these "unbilled services" would be money recouped from the fiduciary in this regard. Further, it is evident that these past "unbilled services" were of a general nature in relation to the estate, rather than services or litigation specifically relating to the issue of a reduction of any excess executor and attorney fees charged by the fiduciary.

Appellant's averments further alleged that after it became apparent that appellant might be appointed to the bench and thus would not be able to continue to represent Davis and the Bests in that action, that these same appellees had subsequently agreed, in the alleged unwritten novation, to pay appellant a *contingent* fee for these "unbilled" legal services from any recovery generated by Lynch against the fiduciary. Appellant described this as a novation of an earlier fee agreement, the consideration for which was the forgiveness of any fee due for the earlier "unbilled legal services."

In relation to the issue of Lynch's individual liability, this court would first note that even if valid, any such contract or novation which appellant had with the Bests and Davis would not extend and be enforceable against Lynch solely on the basis of the above underlying debt. Appellant's debtors as to those earlier "unpaid legal services" were the Bests and Davis, not Lynch.

Any claim to be made directly against Lynch by appellant had to result from an agreement between Lynch and appellant which had to be supported by independent consideration of some kind. As to this particular prong of appellant's contract claim, appellee Lynch did not contest the existence of a fee-splitting agreement between himself and appellant; instead, he asserted that the consideration of appellant's future services as co-counsel was contemplated but never

---

3. This section of the affidavit specifies only a "fee," not a "contingent fee."

provided. Thus, this agreement was no longer enforceable because appellant did not render any compensable services as co-counsel with Lynch after this agreement was reached.

In support of this argument, appellees emphasize that any "services" actually performed by appellant were only those which any attorney would be legally bound to do upon withdrawal from a case, pursuant to DR 2–110(A)(2) of the Code of Professional Responsibility.

In response to this argument, appellant asserted that the agreement between himself and Lynch was still enforceable because, even though he did not perform any work on the action against the executor before he withdrew from the case, he had always been ready to assist or cooperate with Lynch in pursuing the action against the executor.

■ However, R.C. 4705.01 specifically states that a judge cannot engage in the practice of law during his tenure on the bench. Therefore, even if Lynch had sought appellant's assistance while negotiating the settlement to the action, appellant could not have provided such assistance beyond that contemplated under DR 2–110(A)(2). Under such circumstances, appellant's assertion that he "stood ready to help" would not constitute sufficient consideration supporting the agreement between himself and Lynch.

In relation to the issue of Lynch's liability, this court would note that appellant did not advance any theory in reference to Lynch's status as holder of the money in question. His only claims against Lynch sounded in fraud and contract. If appellant had remained as co-counsel of record long enough to have rendered some legal services and to have maintained some responsibility for the case, there would be no real issue that appellant and Lynch would have had a valid and enforceable legal contract between them to split the fee. DR 2–107(A).

Case law in Ohio and elsewhere supports the proposition that because of its nature, a contingent fee arrangement need not have the same proportionate relationship to the work actually performed as would an hourly fee.

That was not the case, as appellant *never* functioned as co-counsel and, in fact, voluntarily withdrew from the case long before any recovery was generated; therefore, no obligation existed on Lynch's part to share the contingent fee under appellant's theory of a fee-splitting agreement. We see a distinct difference between *no* work being done and *some* work being done. Thus, the portion of the summary judgment referencing Lynch's liability on the contract is affirmed.

As to the alleged agreement between appellant, Davis, and the Bests, appellees primarily maintained that appellant's evidentiary materials had not been sufficient to raise a factual issue as to the existence of the pre-novation "understand-

ing" or "agreement" contract concerning the payment of a fee for unbilled legal services.

Specifically, appellees contended that for the purpose of responding to a summary judgment motion, appellant's averments in his affidavit had not been sufficient to establish that the existence of the pre-novation "understanding" or "agreement" rose to the level of a contract. That was because the averments did not establish one of the basic requirements necessary for a contract—consideration.

Based upon this, appellees further argued that although appellant's reference to past "unbilled legal services" might have raised a factual issue as to whether the services had been rendered, it did not raise an issue as to whether these services created a legal debt upon which a novation could be predicated,[4] to wit: it did not establish that these services had value.

As a general proposition, this court would agree that the mere fact that appellant rendered "unbilled legal services" did not necessarily mean that Davis and the Bests were originally indebted to him, *i.e.*, gratuitously rendered services cannot later be magically transformed into consideration for a new debt.

■ Like a general contract, a contract of novation must be supported by sufficient consideration to be enforceable. 18 Ohio Jurisprudence 3d (1980) 213, Contracts, Section 290. The courts of this state have consistently held that if one party is already indebted to the second party, the release or forgiveness of that *prior* debt constitutes sufficient consideration to support a novation. See, *e.g.*, *McGlothin v. Huffman* (1994), 94 Ohio App.3d 240, 640 N.E.2d 598.

Thus, if appellant's affidavit were sufficient to raise a factual issue as to whether Davis and the Bests had been indebted to him for these "unbilled legal services," summary judgment would not have been appropriate.

As was noted above, appellant averred in his affidavit that at some point prior to the addition of Lynch as co-counsel, an "understanding" had been reached between himself, Davis, and the Bests that they would pay him a fee for the "unbilled legal services" he had rendered through the years in relation to the estate. When interpreted in a light most favorable to appellant, this averment

---

4. In replying to appellant's brief in opposition to the summary judgment motion, appellees did not contest the fact that appellant, Davis, and the Bests had entered into a fee agreement at the time that Lynch was added as co-counsel. In fact, appellees' evidentiary materials implicitly supported the existence of this particular agreement, in that Lynch did not deny that he had initially set aside one fourth of the contingent fee to give to appellant.

However, appellees argued that the consideration for this agreement was to have been appellant's participation as co-counsel in the litigation, *i.e.*, appellees denied that this agreement was a novation.

was sufficient to raise a factual issue as to the existence of both offer and acceptance. Moreover, this court would agree that appellant's reference to "unbilled services" raised an issue as to whether such "unbilled legal services" were performed as claimed.

■ Nevertheless, our review of the relevant case law in this state indicates that in order to establish that the "unbilled legal services" constituted a debt, such that its forgiveness constituted consideration sufficient to support the novation, appellant also had to show that the "fee" contemplated in the *original* agreement was *reasonable* in light of the "unbilled legal services" rendered. In reviewing appellant's evidentiary materials, we conclude that appellant failed to carry his burden as to this factual issue in responding to appellees' summary judgment motion.

In reaching this conclusion, it is important to remember that the *original* agreement did not specify a contingent fee. An attorney seeking the recovery of attorney fees in a noncontingent fee situation must demonstrate that the value of the services rendered bears some relationship to the resulting fee. Put another way, in order to carry his burden of proof, the attorney must present some evidence that these "unbilled legal services" had value sufficient to constitute consideration for the client's promise to pay. The attorney must establish the "fairness and reasonableness" of the fee. *Hermann, Cahn & Schneider v. Viny* (1987), 42 Ohio App.3d 132, 537 N.E.2d 236; *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448; DR 2–106, Code of Professional Responsibility.

In relation to the issue of which party has the burden of establishing a fee's fairness and reasonableness, the Sixth Appellate District has held:

"1. Prior to employment and the formation of the fiduciary relationship between attorney and client, compensation for services rendered by the attorney may be fixed by contract; and, in the absence of fraud or overreaching, the contract will be enforced without the attorney showing it is fair and reasonable.

"2. After the establishment of the fiduciary relationship between attorney and client, the attorney has the burden to establish the fairness and reasonableness of his fee." *Jacobs v. Holston* (1980), 70 Ohio App.2d 55, 434 N.E.2d 738, paragraphs one and two of the syllabus.

In its determination that the burden of establishing the reasonableness of a fee switches to the attorney if a fiduciary relationship between the attorney and the client has already been established, the *Jacobs* court cited to both the common law and the Code of Professional Responsibility. In relation to the latter, the court stated that "a court of law should not lend its support to the enforcement of

a contract which may violate a Supreme Court Disciplinary Rule." *Id.,* 70 Ohio App.2d at 60, 434 N.E.2d at 742.

In *Jacobs,* the plaintiff-attorney was granted summary judgment on his claim for attorney fees. On appeal, the Sixth Appellate District held that summary judgment was warranted because the attorney had not submitted any materials showing the reasonableness of the fee. The court emphasized that a mere conclusory statement in the attorney's affidavit was not sufficient to raise a factual issue as to this point. See, also, *Franken v. Ungaro* (June 18, 1988), Mahoning App. No. 86 C.A. 181, unreported, 1988 WL 67522.

In interpreting Civ.R. 56, this court has held that in responding to a defendant's motion for summary judgment, a plaintiff must submit evidentiary material as to each factual issue upon which he will have the burden of proof at trial. *Pasqualone v. Strauss* (Dec. 17, 1993), Lake App. No. 92–L–174, unreported, 1993 WL 548468, citing *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

Given that an attorney must submit evidential material tending to show the reasonableness of his fee in order to be granted summary judgment, it follows under *Pasqualone* that an attorney must satisfy this same burden in responding to a defendant's summary judgment motion.

In this case, appellant's evidentiary materials indicated that a fiduciary relationship existed between himself, Davis, and the Bests when the underlying prenovation fee agreement was reached. However, appellant failed to designate in his materials the value of a single specific instance of a legal service rendered or legal expertise provided under the original agreement. A general recitation of "[p]hone conversations, research, file review, meetings, * * *" without offering some corresponding claim as to value was simply inadequate to raise a factual issue as to whether such a fee in relation to such services was "fair and reasonable," thus constituting legal consideration which would establish a debt.[5]

In any other type of noncontingent fee dispute, appellant would have had to put forth an itemized list of services rendered and time spent before the client would have been required to present evidence challenging the fairness and reasonable-

---

5. The only reference to the specifics of these unknown legal services is found in appellant's deposition of November 29, 1991 at pages 111–112:

"Q. Okay. Can you tell me what those services were that you say you recollect that you did—performed during this period that are not reflected on the invoices?

"A. I can't remember specifically now.

"Q. Can you remember generally?

"A. Phone conversations, research, file review, meetings. You know, there were—there were a lot of them showing up on the billing statements, but I think there were—they were not showing up on the billing statements, too, I mean, I just wasn't billing everything here during this period of time."

ness of the fee claimed. No merchant suing on an account would survive a summary judgment exercise with the statement, "I sold them some merchandise of unknown quantity and value for which they owe me some money. I know it was like the other merchandise I sell, but I can't specifically remember what it was." This ability to only *"generally"* recollect, rather than to *specifically* recollect even *one* instance, is insufficient to establish a debt.

In summation, this court concludes that although appellant may have presented sufficient materials to raise a factual issue as to the existence of the prior "unbilled legal services," he did not carry the simple burden on the issue of whether the *value* of such "unbilled legal services" was sufficient to create a debt, the forgiveness of which would constitute sufficient consideration for a subsequent novation. Under such circumstances, the trial court did not err in granting summary judgment in favor of Davis and the Bests as to the contract claim.

■ In addition to appellant's breach-of-contract claim, appellees also moved for summary judgment as to his claim of fraud. While appellant testified to his belief that Lynch had engaged in fraudulent behavior, he was unable to testify to or present any evidentiary material setting forth the elements of fraud. Thus, he failed to demonstrate that any of the appellees had engaged in fraudulent behavior. In fact, appellant's affidavit did not contain any averment as to this particular claim.[6]

Despite appellant's protests to the contrary, we do not perceive the trial court's analysis to have been a "weighing of the evidence." Rather we see it as a matter of determining the sufficiency of appellant's submissions, particularly in light of *Wing*. Did appellant establish that legal services were rendered in the original fee arrangement and that those services had value such that they created a debt, the forgiveness of which would have constituted consideration for the subsequent novation? We think not. Thus, we do not agree that the trial judge acted as a factfinder, but rather pursued his proper role here as a determiner of the law.

Pursuant to the foregoing analysis, this court concludes that appellant's evidentiary material was insufficient to withstand summary judgment on the breach-of-contract claim, as well as the fraud claim. Thus, the decision of the trial court is affirmed.

II

In App. No. 93–G–1814, appellees have raised one assignment of error for consideration. Under this assignment, appellees contend that the trial court

---

6. Appellant's depositions have many references to appellant's opinion that fraudulent behavior was involved. However, he never sets out the elements of fraud.

erred in failing to hold an evidentiary hearing prior to ruling upon their motion for attorney fees. Specifically, they maintain that under R.C. 2323.51(B), the trial court was required to hold an oral hearing on the motion.

R.C. 2323.51(B)(1) provides that a trial court may award reasonable attorney fees to any party that was adversely affected by frivolous conduct during the course of an action. Subsection (B)(2) of the statute then states that such an award can be made only if the court does all of the following: (a) sets a date for a hearing on the motion for attorney fees; (b) gives notice of the hearing date to the parties and counsel; and (c) conducts the hearing and allows the parties the opportunity to present evidence on the matter.

In interpreting these requirements, this court has emphasized that R.C. 2323.51(B)(1) does not state that a hearing must be held whenever a motion for fees has been timely filed; instead, the statute provides that an award "may be made" if the procedural requirements have been met. Based upon this reasoning, we have held that a hearing is not required when the trial court denies the motion on its face. *Cregar v. Ohio Edison Co.* (Jan. 11, 1991), Trumbull App. No. 89–T–4316, unreported, 1991 WL 1579. This holding was evidently predicated upon the proposition that if the motion is based solely upon facts which are already known by the trial court, a hearing is not needed if the court has determined that the facts do not support a finding of frivolous conduct, as a matter of law.

■ As grounds for their motion in this case, appellees maintained that the filing of the instant action constituted frivolous conduct because appellant's claims were not warranted under the existing law. This type of argument was clearly one which the trial court could fully review without benefit of a hearing. Thus, pursuant to the foregoing authority, appellees' sole assignment is without merit.

### III

Pursuant to the foregoing analysis, the judgments of the trial court in case Nos. 93–G–1804 and 93–G–1814 are affirmed.

*Judgments affirmed.*

JOSEPH E. MAHONEY, J., concurs.

FORD, P.J., concurs in part and dissents in part.

FORD, Presiding Judge, concurring in part and dissenting in part.

The decision reached by the majority further erodes upon the rights of lawyers, causing them to be:

"[T]he only persons in this state who are prohibited from enforcing written contracts according to their express terms and conditions when such contracts involve payment for services and a dispute, regardless of cause or merit, arises over representation." *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 577–578, 629 N.E.2d 431, 437 (Douglas, J., concurring in part and dissenting in part).

I, too, believe that "*even* those who are most critical of lawyers and the legal profession would find [the policy adopted by the majority] to be patently unfair." (Emphasis *sic.*) *Id.* at 578, 629 N.E.2d at 437. As such, I must respectfully concur in part and dissent in part.

Initially, I will note that this matter arose from a summary judgment exercise, and the trial court is to construe the evidence *most strongly* in the favor of the nonmoving party, the appellant. Civ.R. 56(C). This court is not to weigh the evidence, but to determine if the nonmoving has produced evidence on any issue on which it bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

The record herein contains sufficient evidence for the purposes of summary judgment that appellant performed services on the underlying matter. As delineated below, the testimony offered at the depositions is replete with material to substantiate appellant's claim that genuine issues of material fact remain. I emphasize again that the question before us is whether summary judgment was properly granted here, not who would ultimately prevail on this issue.

The majority places great emphasis on the phrase "unbilled legal services," and expends a substantial amount of effort analyzing its relationship to appellant's entitlement to the fees under the theory of "novation." Such a discussion is unnecessary, as the record quite simply reveals that the "unbilled legal services" are those services rendered in connection with the matter from which this claim arose prior to the co-counsel affiliation between appellant and appellee Lynch. The majority rather summarily opines that "these past 'unbilled services' were of a general nature in relation to the estate, rather than services or litigation specifically relating to the issue of a reduction of any excess executor and attorney fees charged by the fiduciary." However, in reaching this conclusion, the majority fails to construe the evidence most strongly in favor of the appellant. The record contains evidence that appellant performed work on the subject matter *prior* to the referral.

At deposition, the appellant, when questioned by appellee, Matthew J.D. Lynch, testified as follows concerning the fee agreement:

"A. And again, I think it was also the intention of everybody that—that *one of the things that I provided as a basis for this agreement was an extensive amount of work on the file, and with the Dolan law firm* [7] that had gone on prior to the agreement. I think, in part, the agreement was a recognition of the extensive work that I had—had already done on the matter. [Footnote added.]

" * * *

"A. * * * [T]here came a time that [appellees, the Bests and Davis,] came into the office to see me and—and—and subsequent to that, *I began to take some action and represent them in—in making inquiries of the Dolan firm about some of the matters.* And the discussions back then were that—that I would just make some initial inquiries, try to find out some information for them. That there would be an hourly billing on some of those matters, but that if the matter ever matured into something more, there was some indications that there would be a—there would, in fact, have to be some other fee arrangement that would be made.

" * * *

"A. The initial occasions in the representation were that I was to direct myself to just a couple of specific questions concerning the—the estate, very limited contract. But you know, as the representation continued, you know, there became more and more indications that there were more and more problems with the estate * * *.

" * * *

"A. *Well again, the agreement was that—that there were substantial services that had already been performed—that had been performed prior to that time that there were uncompensated, and that would—that would be merged into this agreement, yeah.*" (Emphasis added.)

The appellant further delineated his understanding of the basis for the fee splitting:

"A. But—but yeah, there—it did contemplate also that—the basis of the agreement was that, under any circumstances [*sic* ], I wasn't going to perform a lot of services under this contract. I mean, even if I had not gotten the appointment to the bench, and even if I continued to practice law, I—I was not going to be deeply involved in this matter from that point on * * *.

"A. * * * I think you were being brought in as a—as counsel in this to—to handle the litigation at that point. * * * "

---

7. The Dolan law firm had been responsible for handling the estate and ultimately agreed to a reduction in attorney and executor fees. It is from this reduction that appellant is claiming his entitlement.

Independently, the evidential table is replete with material to demonstrate that appellant performed work *after* the referral:

"A. It was a wide ranging discussion between you and [me] as to what had gone on in the file. I gave you, I think, a fairly thorough background and briefing of a fairly complex and involved legal matter, and I think you, you know, based on—on that briefing, I think had a very thorough understanding of—of that.

" * * *

"A. * * * [Y]ou and I had several discussions and/or meetings in—in connection with this legal matter. We discussed the—the history of the matter, and the facts of the matter, and our—we shared our—our legal thoughts on the matter."

Clearly, this colloquy provides an evidential table sufficient to overcome the summary judgment hurdle. Construing this evidence most favorably, one may conclude that the appellant had performed work on the underlying action, *both before and after the referral,* creating the entitlement to payment pursuant to the fee-splitting agreement.

The majority also disputes appellant's contention that a contingent fee arrangement was entered into by the parties. However, reasonable minds could conclude that the parties had intended such a fee agreement. Specifically, the materials supplied in connection with appellees' motion for summary judgment, appellant's opposition to the motion, and appellees' reply, when viewed in a light most favorable to the appellant, support this proposition.

Appellees submitted copies of two letters dated December 1, 1988 and December 15, 1988, in support of their motion for summary judgment. The December 1, 1988 letter from appellee Lynch to the Bests and Davis, notes: "I look forward to working with [appellant] to resolve this situation as soon as possible." The December 15, 1988 letter from appellant to appellee Lynch, apparently prepared subsequent to a telephonic communication between the two attorneys, provides in relevant part:

"An agreement has been reached between yourself, myself, and the Best family concerning your proposal, as follows:

" * * *

"3. Any fees paid by the Best family to you for this representation representing *the contigency [sic] fee portion will be split between you and [me] with you receiving seventy five percent (75%) of that fee and me receiving twenty five percent (25%) of that fee.*" (Emphasis added.)

Furthermore, appellant attached an affidavit to his opposition to the motion. In addition to the portion relied upon by the majority,[8] the affiant stated the following:

"9. Affiant did provide all assistance requested of him by [appellee] Lynch[;] on no occasions [*sic* ] did he refuse to cooperate with or assist [appellee] Lynch, and did provide legal services to the Best family.

"* * *

"11. [Appellee] Lynch repeatedly consulted with Affiant over the nearly two year period from December, 1988 through November, 1990 pertaining to matters surrounding the Estate of Walter Best.

"12. [Appellee] Lynch represented to Affiant in December, 1990 that he had set aside Affiant's fee."[9]

Finally, appended to appellees' reply brief, are the affidavits of the Bests and Davis. All three contain the following statement:

"[A]t no time did the undersigned enter into any understanding, agreement, oral contract, or written contract with [appellant] for the payment of legal fees on any other basis [other than hourly], including any contingent fees, until December of 1988 when [appellant], the undersigned, and [appellee] Matthew Lynch entered into the agreement contained in the letters of December 1 and December 15, 1988."

By appellees' own admissions, these affidavits taken in conjunction with the letters and, in particular, the December 15, 1988 letter delineating the fee schedule, certainly support the conclusion that the parties had entered into a fee-splitting agreement.[10]

Not only do I disagree with the majority's analytical conclusions regarding the state of the evidence, I also disagree with the legal pronouncements espoused in its dicta. The majority rather summarily concludes that appellant "voluntarily withdrew from the case long before any recovery was generated; therefore, no

---

8. The majority stresses the fact that appellant, in his affidavit uses the term "fee" rather than "contingent fee" to describe the compensation arrangement. However, I believe that this is a distinction without substance in a summary judgment exercise. Furthermore, the letter exchange of December 1, 1988 and December 15, 1988 clearly calls for a contingent fee contract.

9. There is no dispute that Lynch had set aside $29,137.50. This amount represents one quarter of the $116,665.00 contingent fee received by Lynch. From this, one may reasonably infer that Lynch understood there to be a valid fee-sharing agreement.

10. The majority also suggests that appellant does not have a cause of action against Lynch. However, as noted previously, the record indicates that Lynch accepted the terms of the fee-splitting contract, and Lynch even put the appellant's share aside.

obligation existed on Lynch's part to share the contingent fee \* \* \*." Again, without viewing the evidence in a light most favorable to the appellant, the majority dismisses his claim in a cursory fashion by concluding: "Any claim to be made directly against Lynch by appellant had to result from an agreement between Lynch and appellant which had to be supported by independent consideration of some kind." However, in *King v. Housel* (1990), 52 Ohio St.3d 228, 556 N.E.2d 501, the court recognized the right of one attorney to directly pursue another: " '[W]here both attorneys have rendered services and one collects the entire fee, he is liable to the other in accordance with the terms of [a fee-sharing] agreement.' *Gugle v. Loeser* (1944), 143 Ohio St. 362, 28 O.O. 318, 55 N.E.2d 580, at paragraph two of the syllabus." *Id.* at 230, 556 N.E.2d at 504.

The majority also declares that "appellant could not have provided such assistance beyond that contemplated under DR 2–110(A)(2)." [11] While a judge is precluded from performing further legal work, he should be afforded a reasonable time in which to wind-up his practice. This is to safeguard the interests of soon-to-be former clients by allowing appellant and others similarly situated to inform new counsel of past events or by clarifying files. This type of "representation" should be permissible, and even encouraged, as long as the judge does not provide advice about the future conduct of the representation. To hold otherwise would be contra the underlying tenets of the legal profession, as the best interests of the client would not be served. Furthermore, nothing within R.C. 4705.01 or Canon 5(F) of the Code of Judicial Conduct precludes a judge from receiving compensation for work performed prior to donning a robe and assuming the bench, whether the fee is based upon hourly billings or a contingent fee.

While I disagree with these conclusions for the reasons stated previously, I also take issue with the legal principle announced by the majority. Specifically, I take umbrage with the majority's conclusion that to be entitled to a split-fee arrangement, appellant had to "[remain] as co-counsel of record long enough to have rendered some legal services and to have maintained some responsibility for the case \* \* \*." Under this published rule, an attorney would be required to perform work on the matter *after* it has been referred to co-counsel. Merely rendering services before the referral would be insufficient to support a division of fees under the majority's application of the pertinent canon. However, no court in Ohio, to this writer's knowledge, has reached such a conclusion. The only requirement here appears to be that the referring attorney perform some

---

11. The majority suggests that the agreement is void as it may violate a Supreme Court of Ohio Disciplinary Rule. However, in *King* at paragraph two of the syllabus, the Supreme Court of Ohio held: "A lawyer's failure to fully disclose a fee agreement to a client as required by DR 2–107(A)(1) may not be used by the noncomplying attorney to avoid enforcement by the other of an otherwise valid fee agreement."

measurable work on the matter. See, *e.g., Waterman v. Kitrick* (1990), 60 Ohio App.3d 7, 572 N.E.2d 250; R.C. 4705.08 and DR 2–107(A). Nothing requires that the work be undertaken subsequent to the transfer of the file.

Additionally, I part company with the majority, as its decision would invite attorneys to delay referring matters in a timely fashion. Rather than direct the matter to co-counsel with appropriate expertise with the two advocates sharing the proceeds based upon a prearranged percentage, the initial attorney may be more inclined to retain the file to ensure that he has "justified" his fees should they be subsequently questioned by either the client or co-counsel. Such actions may not be in the best interest of the client, and they should be discouraged, not encouraged. Therefore, as long as the record demonstrates that an attorney who has entered into a fee-splitting arrangement on a contingent fee matter has rendered some measurable work on the matter, a court should not subject the attorney to the task of demonstrating the reasonableness of the resulting fee under these circumstances.

Finally, the majority concludes by returning its focus to the issue of "novation" and embarks on an auxiliary discussion of "the sufficiency of the consideration," and whether appellant's "services had value." The majority, in undertaking this analysis, applies standards which are applicable to noncontingent fee matters.[12] For the reasons previously discussed, I do not venture into the "troubled waters" of that question.

Additionally, I find that the majority's conclusion is wholly inconsistent with the contingent fee practice which is based upon the concept that an attorney agrees to accept employment and receive payment conditioned upon resolution of the matter favorable to the client.[13] Regardless of the size of the award, the attorney is entitled to that agreed-upon percentage *irrespective* of the amount of time spent by that attorney on the file. The size of the fee is not subject to review as long as it is not unreasonable in proportion to the sum recovered by the client. In other words, as long as the percentage is reasonable, the size of the fee generated should not be questioned. This syllogism is also predicated on the notion that the parties have entered into an arm's-length agreement for the attorney's services.

---

**12.** While the majority recognizes that "a contingent fee agreement need not have the same proportionate relationship to the work actually performed as would an hourly fee," I do not share their general view that an attorney must demonstrate the reasonableness of the resulting fee generated in connection with a contingent fee contract under all circumstances, although I understand that some contingent fee situations might require such a showing.

**13.** This, of course, assumes that the client recovers. Obviously, if not, the attorney is precluded from pursuing the client for the value of his services for the work performed.

In *Williamson v. Belovich* (1993), 84 Ohio App.3d 628, 632–633, 617 N.E.2d 786, 789, the court upheld an attorney's entitlement under a contingent fee "contract to take fifty percent of all proceeds, including statutory attorney fees * * *." In obtaining the conclusion, the court cited *Wilmington v. J.I. Case Co.* (C.A.8, 1986), 793 F.2d 909, which states:

"To our minds, to limit attorney compensation in that manner would be an unwarranted interference with a private contract. As the Eleventh Circuit has observed, a contingent fee contract represents the client's and the attorney's notions of a reasonable fee * * *." *Id.* at 923.

Under the position espoused by the majority, the contingent fee would, in essence, be significantly gelded, if not abolished, under such facts. In every case, a client dissatisfied with the compensation the attorney receives would be able to petition the court to review the fee agreement in relation to the work provided.[14] I do not endorse, nor do I believe, that the Supreme Court of Ohio has sanctioned such strict scrutiny of fee-splitting arrangements.

In conclusion, the evidential table was sufficient to establish a question of fact that the appellant worked on the file, and that payment for these services was governed by a fee-splitting agreement accepted by the parties. Absent a patently unreasonable contingent fee arrangement, I would not require the appellant to "[remain] as co-counsel of record long enough to have rendered some legal services and to have maintained some responsibility for the case * * *" to earn his fee, thereby lessening the blow of the punch line from, as Justice Douglas stated: "the worst of the bad jokes about lawyers." *Lansberry*, 68 Ohio St.3d at 577, 629 N.E.2d at 437.

For obvious reasons, the analysis is dispositive of appellees' assigned error regarding the court's denial of their motion for attorney fees. Notwithstanding the foregoing, I concur with the result obtained by the majority in its treatment of appellees' assignment. Additionally, I concur with the majority's disposition of appellant's fraud allegation.

Therefore, I must respectfully concur in part and dissent in part.

---

14. I would envision the following scenario: An attorney is retained in a wrongful death matter. The extent of the coverage afforded under the insurance policy of the tortfeasor is substantially less than the damages suffered, and the insurance company, upon receipt of a letter of representation from the attorney, elects to tender the policy limit.

The majority would require the attorney to demonstrate the reasonableness of the standard one quarter or one third fee for drafting one letter to an insurer. Clearly, no attorney could justify an hourly billing which would generate such an entitlement.