OPINION
Defendants-appellants, the Estate of David Mark Boulden, Deceased, and Rhonda Lynne Boulden, Administratrix of the Estate of David Mark Boulden, appeal the February 23, 2001 Judgment Entry of the Richland County Court of Common Pleas, which granted summary judgment against them. Plaintiff-appellee is Lisa Marie Boulden, decedent's ex-wife. Appellee has also filed a conditional cross-appeal.
 STATEMENT OF THE FACTS AND CASE
Appellee and decedent were married on May 18, 1987. Two children were born as issue of the marriage: Leslie M. Boulden, born on March 13, 1988; and Thomas N. Boulden, born on August 29, 1999. In a Judgment Entry dated March 17, 1995, the Richland County Court of Common Pleas, Domestic Relations Division, granted the appellee and the decedent a divorce. The Divorce Decree incorporated an Agreement of the parties relating to all matters surrounding the divorce.
Paragraph 18 of this Agreement noted the decedent was the owner of a life insurance policy through the Globe National Life Insurance Company. Decedent agreed to keep the policy in full force and effect, with the exact terms and conditions the policy contained during the marriage. Said life insurance policy named appellee as the sole beneficiary in the event of decedent's death and had a stated death benefit of $767,000.
Decedent permitted the policy to lapse due to nonpayment on May 2, 1995, just over a month after the entry of the divorce decree.
In 1996, and 1997, the parties engaged in post-decree litigation over the custody of the parties' minor children. At that time, appellee's counsel raised the issue of decedent's noncompliance with the terms of the decree regarding the insurance policy. In response, decedent's counsel provided appellee with a copy of the declaration page of a new life insurance policy through J.C. Penney Life Insurance. Appellee made no further inquiry or objection to the J.C. Penney policy at that time.
The J.C. Penney Life Insurance Policy provided $50,000 of coverage in the event of an accidental death. The parties agree the J.C. Penney Policy did not provide the same benefits as the policy decedent had maintained during the marriage and at the time of the divorce decree. Furthermore, the Globe National Life Insurance Company was a general life insurance policy whereas the J.C. Penney Policy provided benefits only for accidental death.
On September 13, 1999, decedent died in an automobile accident. After completing the necessary paperwork, appellee accepted the $50,000 death benefit under the J.C. Penney Policy. On January 13, 2000, appellee filed a Complaint in the Richland County Court of Common Pleas against decedent's estate alleging breach of contract, fraud, punitive damages, attorney's fees, and a constructive trust.
On December 1, 2000, appellants filed a Motion for Summary Judgment. Appellants alleged no breach of contract action could exist because the divorce agreement adopted by the trial court could only be enforced through a contempt proceeding. Appellee also argued the actions of the parties subsequent to the lapse of the first policy, created a novation. Finally, appellants maintained appellee was unable to prove fraud. As part of the fraud argument, appellants maintained the doctrine of laches should be applied.
On January 2, 2001, appellee filed her Memorandum Contra to appellants' Motion for Summary Judgment and her Motion for Leave to File Summary Judgment. Appellee specifically requested the trial court treat the memorandum contra as her Cross-Motion for Summary Judgment. The trial court granted appellee's request and permitted appellants until February 5, 2001, to file a response to appellee's cross motion for summary judgment.
Although the facts are undisputed, there is some confusion surrounding appellee's actual knowledge of the substitution of the $50,000 policy for the $767,000 policy referenced in the Divorce Decree. At her deposition, appellee stated her deceased ex-husband represented at a mediation he had let the $767,000 policy lapse but had replaced it with a $1 million policy.[1] However, appellants also presented evidence appellee's attorney had received notice of the $50,000 policy as a substitute for the coverage ordered under the Divorce Decree.
In appellee's deposition, the following exchange took place:
 Q. And do you have any knowledge why Mark, you deceased [ex-]husband, applied for and obtained [the J.C. Penney policy] for your benefit? * * *
 A. I have no idea why he would get a policy for $50,000. I can't answer that.
 Q. You had nothing to do with him seeking this J.C. Penney life insurance policy for your benefit in November or preceding November of 1995?
 A. As far as I knew, he was ordered to maintain the other policy through our divorce decree, and so I wouldn't have had any idea why he would have gotten this policy, nor was I aware that he had gotten it. So I don't know.
 Q. Okay. And to my understanding, your statement is that no representative of yours ever notified you of this policy being taken out in November of 1995 either.
A. No.[2]
On January 29, 2001, the trial court granted partial summary judgment in favor of appellants on appellee's fraud and punitive damage claims. In making this determination, the trial court stated:
 Assuming for the sake of argument that defendant's decedent never intended to keep the old $767,000 policy in effect as agreed, plaintiff still cannot prevail. That is because it is undisputed that defendant's decedent told plaintiff, through her attorney, that that policy had lapsed and he had substituted the $50,000 J.C. Penney policy. That happened in March, 1997.
 * * * In other words, any loss plaintiff suffered was not as a result of reliance on fraud. Plaintiff had no justifiable right to rely on a March, 1995 misrepresentation" after she was told about it [through her attorney] in March, 1997.
In a February 20, 2001 Notice of Dismissal, appellee dismissed Count IV, the constructive trust count of her complaint without prejudice
On February 23, 2001, after accepting appellants' response to appellee's cross motion for summary judgment, the trial court granted summary judgment in favor of appellee on the breach of contract claim. The trial court awarded appellee $717,000, the amount of the life insurance policy decedent was obligated to maintain pursuant to the terms of the Divorce Decree, recognizing a set-off of $50,000 paid to appellee from the J.C. Penney Policy.
It is from this Judgment Entry appellants prosecute this appeal, assigning the following as error:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING DEFENDANTS'/APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE ON HER CROSS MOTION FOR SUMMARY JUDGMENT BASED UPON THE FACT THAT A NOVATION HAD OCCURRED.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING DEFENDANTS'/APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE ON HER CROSS MOTION FOR SUMMARY JUDGMENT AS PLAINTIFF/APPELLEE WAS GUILTY OF LACHES.
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING DEFENDANTS'/APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING JUDGMENT IN FAVOR OF PLAINTIFF/APPELLEE ON HER CROSS MOTION FOR SUMMARY JUDGMENT AS THEIR HAD BEEN DEMONSTRATED A WAIVER OF THE EXPRESS TERMS OF THE "CONTRACT."
In addition, appellee assigns one error as a conditional cross appeal:
 THE TRIAL COURT ERRED AS A MATTER OF LAW IN DISMISSING THE FRAUD AND PUNITIVE DAMAGES CLAIMS BY FINDING THAT APPELLEE'S FAILURE TO BRING A CONTEMPT ACTION TWO YEARS AFTER THE AGREEMENT WAS EXECUTED SHOWED A LACK OF RELIANCE.
 I
In the first assignment of error, appellants maintain the trial court erred in granting appellee's motion for summary judgment on the breach of contract claim because a novation had occurred. Appellants assert that when applying the undisputed facts to the law of novation, the trial court could only conclude a novation had occurred. We disagree.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.[3] Civ. R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[4]
A novation occurs "where a previous valid obligation is extinguished by a new valid contract, accomplished by substitution of parties or of the undertaking, with the consent of all the parties, and based on valid consideration."[5] In order to effect a valid novation, all parties to the original contract must clearly and definitely intend the second agreement to be a novation and intend to completely disregard the original contract obligation.[6] To be enforceable, a novation requires consideration.[7] A novation can never be presumed.[8]
"Intent, knowledge and consent are the essential elements in determining whether a purported novation has been accepted."[9] A party's knowledge of and consent to the terms of a novation need not be express, but may be implied from circumstances or conduct.[10] There must be a common understanding between the parties to the arrangement, and a clear and definite expression of both knowledge and consent.[11]
In its January 29, 2001 Judgment Entry denying appellants summary judgment on appellee's breach of contract claim,[12] the trial court stated:
 The only evidence offered for novation is that Plaintiff was provided a copy of the $50,000 policy and she said nothing. There was no evidence of mutual agreement to make the change. It was plainly a unilateral change decided upon by [decedent].[13]
Appellants maintain appellee's behavior demonstrated a novation. Appellants argue appellee's knowledge of the cancellation of the old policy, her subsequent silence, her failure to object to the substitution in the 2 + years preceding decedent's death, and her acceptance of the proceeds of the J.C. Penney Policy all demonstrate her agreement to the reduced coverage. We cannot agree.
We are mindful appellee was technically notified of the existence of the $50,000 policy through her attorney, but the undisputed evidence also indicates a lack of the mutual assent required for novation. Although appellee was technically aware of the J.C. Penney policy by notification to her attorney, there is no evidence to indicate she accepted the new policy in substitution of the old. As noted supra, appellant's deposition testimony indicates she had no actual knowledge of the substitution of the policy. There was never a clear and definite expression of consent to a new agreement.
Even assuming we could infer a meeting of the minds given the notice to her attorney of the substitution of policies and from appellee's failure to enforce her rights in the 2 + years before her ex-husband's sudden and unexpected death, the novation argument still lacks merit because appellant has presented absolutely no evidence of consideration for any such agreement. We cannot infer a benefit to appellee by a purported acceptance of a reduced-coverage policy. Appellant has also failed to demonstrate a detriment to decedent or to decedent's estate by appellee's alleged acceptance of the J.C. Penney policy.
Accordingly, we agree with the trial court's finding appellant failed to produce evidence sufficient to demonstrate a novation had occurred.
Appellants' first assignment of error is overruled.
 II
In their second assignment of error, appellants maintain the trial court erred in failing to apply the doctrine of laches. Specifically, appellants maintain appellee's delay of 2 + years after learning of decedent's substitution of a lesser-value policy should now preclude any right she might have to claim entitlement to a greater amount. We disagree.
 The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.[14] Prejudice is not inferred from a mere lapse of time.[15][16]
In order to successfully invoke the equitable doctrine of laches, it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim. Laches is an equitable doctrine and it is fundamental that he who comes into equity must come with clean hands.[17] A knowing violation of applicable law would certainly preclude a party from asserting the affirmative, equitable defense of laches.[18]
We find appellant's argument fails because they cannot demonstrate the fourth element of the doctrine, prejudice. Appellants present no evidence of prejudice, either to the decedent or to the estate because appellee failed to exert her right to a higher-coverage policy in the 2 + years before her ex-husband was involved in the accident which took his life. We reject appellants' argument defense of the instant lawsuit constitutes prejudice, sufficient to satisfy the doctrine of laches.[19]
Because we find reasonable minds could not conclude appellee's knowledge of the decedent's substitution of a lesser-value life insurance policy and her subsequent failure to take action before his untimely death, even coupled with her acceptance of the proceeds of the new policy, could constitute a prejudice to the decedent and/or his estate, appellants' second assignment of error is overruled.
 III
In their third assignment of error, appellants maintain the trial court erred in failing to apply the doctrine of waiver. Specifically, appellants maintain appellee's express conduct, i.e., failing to take any action upon learning of the substitution of a lesser value life insurance policy, waived any right appellee may have had to the conditions set forth in the divorce decree. We disagree.
Waiver is defined as a voluntary relinquishment of a known right.[20]
It may be made by express words or by conduct rendering impossible a performance by the other party, or which seems to dispense with complete performance at a time when the obligor might fully perform.[21]
For the same reasons set forth in our analysis of appellants' first and second assignments of error, we find appellants' third assignment of error without merit.
Appellants' third assignment of error is overruled.
In light of the fact we have overruled each of appellants' assignments of error, appellee's conditional cross appeal is moot.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellants.
Hon. Julie A. Edwards, P.J. Hon. William B. Hoffman, J. Hon. John W. Wise, J. concur.
[1] Deposition of Lisa M. Boulden at p. 27-28.
[2] Deposition of Lisa M. Boulden at p. 40-41.
[3] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
[4] Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
[5] McGlothin v. Huffman (1994), 94 Ohio App.3d 240, 244.
[6] Citizens State Bank v. Richart (1984), 16 Ohio App.3d 445,446, 16 OBR 516, 517-518.
[7] Wilson v. Lynch Lynch Co., L.P.A. (1994), 99 Ohio App.3d 760,651 N.E.2d 1328.
[8] Citizens State Bank, 16 Ohio App.3d at 446, 16 OBR at 517-518, 476 N.E.2d at 385-386.
[9] Bolling v. Clevepak Corp. (1984), 20 Ohio App.3d 113, 125.
[10] Bolling, supra, 20 Ohio App.3d at 125; Union Central Life Ins. v.Hoyer (1902), 66 Ohio St. 344.
[11] Id.; Natl. City Bank v. Reat Corp (1989), 64 Ohio App.3d 212,216.
[12] The trial court's February 23, 2001 Judgment Entry subsequently granted appellee's cross motion for summary judgment on the same issue.
[13] Judgment Entry at 3.
[14] State ex rel. Meyers v. Columbus (1995), 71 Ohio St.3d 603,605, 646 N.E.2d 173, 174.
[15] State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn. (1994), 71 Ohio St.3d 26, 35, 641 N.E.2d 188, 196.
[16] State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections, (1995)74 Ohio St.3d 143, 145.
[17] Christman v. Christman (1960), 171 Ohio St. 152, 154.
[18] Grand Bay of Brecksville Condominium v. Markos, (March 25, 1999), Cuyahoga App. No. CV-315132, unreported.
[19] We note appellants tangentially addressed the doctrine of laches in their motion for summary judgment. However, because no significant argument was made to the trial court on the doctrine of laches, the trial court did not address the doctrine in its judgment entry.
[20] State ex rel. Wallace v. State Med. Bd. of Ohio (2000), 89, Ohio St.3d 431, 435.
[21] The White Co. v. The Canton Transportation Co. (1936),131 Ohio St. 190 at 198.