JACOBS, APPELLEE, *v.* HOLSTON ET AL., APPELLANTS.

(No. L-80-045—Decided August 8, 1980.)

*Mr. Gordon H. Hirsch,* for appellee.

*Messrs. Simmons, McConnell, Peters, Taylor & Tolliver* and *Mr. C. Allen McConnell,* for appellants.

POTTER, P. J. This is an appeal from a judgment of the Sylvania Municipal Court entered in favor of the plaintiff-appellee, Frank D. Jacobs, an attorney at law, upon his motion for summary judgment for the balance due on a retaining fee and for his services rendered at a stated hourly rate. We reverse.

The facts are as follows. The defendants-appellants retained the plaintiff as counsel in connection with certain tax investigations and proceedings then being conducted by the In-

ternal Revenue Service. The terms of this retainer were set forth in an "Agreement For Legal and Tax Services," entered into by the parties hereto on September 12, 1977. The material portions of the agreement provided:

"1. The client hereby retains and employs [*sic*] the attorney for representation before the U. S. Internal Revenue Service, to settle and represent him regarding all claims for deficiencies, penalties, and interest, and possible criminal proceedings against him, that may be assessed or proposed by the U. S. Internal Revenue Service with regard to the following tax matters:
" * * *

"2. In consideration for services rendered and to be rendered client agrees to pay the attorney the sum of $2500.00 as a retainer, and in addition thereto $75.00 per hour. The retainer is payable prior to the first conference of the attorney with the Internal Revenue Services, and prior to commencement of services."

The $2,500 "retainer" specified in this agreement was paid by the defendants. Further payments of $400, $200 and $250 were also made on October 21, 1977, November 29, 1977, and July 13, 1978, respectively. The record does not indicate the nature and extent of the services rendered in consideration for these payments. However, in March 1979, the defendants were notified by the Internal Revenue Service (IRS) that its proceedings and investigations were being discontinued. On April 13, 1979, the plaintiff sent a bill "FOR PROFESSIONAL SERVICES" to the defendants in the amount of $1,391.30, which included $21.30 for costs advanced. This sum was the difference between the total fee of $4,720 (consisting of the retaining fee, plus 29.6 hours at $75 per hour, to wit, $2,220) and the payments received in the amount of $2,500, the retaining fee, and $850 paid pursuant to other statements. However, the bill was not paid due to a disagreement between the parties over their fee agreement.

The plaintiff thereafter filed a complaint in the Sylvania Municipal Court seeking recovery of the full amount claimed in his invoice of April 13, 1979. The defendants answered the complaint and counterclaimed. The defendants contended that their initial $2,500 payment was an advancement for services to be rendered by the plaintiff and that they had overpaid the

plaintiff and were, in fact, entitled to a refund. The plaintiff, contending that the $2,500 payment was a retaining fee that was due and owed independent of any services that he had performed, moved for summary judgment pursuant to Civ. R. 56, claiming that there was no dispute as to any material issue of fact and that as a matter of law he was entitled to recover the amount claimed in his complaint.

Although plaintiff attached an affidavit to his motion for summary judgment setting forth his understanding as to the employment agreement, he argued to the lower court that the agreement was clear and unambiguous and that parol evidence could not be used to vary or alter the written employment agreement. Plaintiff further maintained that defendants' unilateral mistake could not void the contract.

In plaintiff's affidavit, he asserted that, prior to the formation of the attorney-client relationship, he had explained to defendant Walter Holston, Sr., that the retaining fee of $2,500 was a nonrefundable retainer in exchange for plaintiff's agreement to accept the case and that the retainer was not to be credited toward hourly work to be billed at $75 per hour. In the affidavit, plaintiff also referred to his bill, but he did not assert how many hours he had spent on the case or that these hours were reasonably necessary.

The defendants failed to file any counter-affidavits, despite the Civ. R. 56 dangers of resting on one's pleadings; however, they did file a memorandum contra to plaintiff's motion for summary judgment. In their memorandum, defendants claimed that a minimum number of hours were expended by plaintiff, and that the tax investigation was, in effect, discontinued by the IRS on its own initiative due to the running of the statute of limitations. Further, defendants claimed that the agreement was ambiguous, that it was not fair and equitable and that there were issues of fact concerning the actual time devoted to the case and what time was reasonably necessary. Contrary to this court's frequent request for a more informative entry, the trial court's judgment entry reads as follows:

"Hearing on Motion for Summary Judgment held.

"Motion for Summary Judgment held. Case taken under consideration. 1-10-80—Motion for Summary Judgment

granted. Judgment for Plaintiff in amount of $1,391.30 plus court costs $50.40 and interest."

From this judgment the defendants have appealed and have filed the following assignments of error:

"First Assignment of Error:

"The trial court erred, as a matter of law, in granting summary judgment to plaintiff, allowing him to collect on the contract without allowing a fact finder to determine the reasonableness of the fees."

"Second Assignment of Error:

"The trial court erred in granting summary judgment to plaintiff based on an affidavit which contained no evidence as to the disputed hours performed on the contract, such hours raising a genuine issue as to a material fact on which reasonable minds could come to more than one conclusion."

Only a liberal interpretation of the pleadings pursuant to the Civil Rules permits this court to consider the issues raised by the briefs filed in connection with the motion for summary judgment in the trial court. Furthermore, we do not know from the trial court's cursory entry the basis for that court's judgment.

First, at this point in the history of the profession it is not necessary to decree that attorneys may contract for payment for their services and file suit to recover for them if not paid.[1]

We consider first the retaining fee for $2,500. The word "retainer" may contain different connotations depending on the agreement, see 1 Speiser, Attorneys' Fees, 7, Section 1:4; 7 American Jurisprudence 2d, 168, Attorneys at Law, Section 208; 7A Corpus Juris Secundum, 521, Attorney and Client, Section 282. A retainer may be given to bind the attorney from representing another, to prevent him from taking a fee from the adverse party or for accepting the case. In the case *sub judice,* considering that the adverse party was the IRS, the fee was logically for accepting the case. While the word "retainer" can also mean an advancement and a credit for ser-

---

[1] This sometimes necessary remedy has not always been available. In 1645, in Colonial Virginia, a Mercenary Attorney Act was passed which prohibited attorneys from serving for pay or fees. This Act was, however, repealed in 1656. See Warren, A History of the American Bar (1911), at 41-42. See, also, 2 Speiser, Attorneys' Fees, 459, 460, Section 18:1, where it is stated: " * * * The original estate of the legal fraternity in England, at least so far as counselors were concerned, was so elevated that they possessed no right to demand compensation for their services. * * * "

vices to be rendered, as asserted by the defendants in the case *sub judice,* the agreement is not ambiguous. In addition, we have the uncontroverted affidavit of the plaintiff. Although doubtful or ambiguous agreements providing for a retainer are construed in favor of the client, see 1 Speiser, *supra,* at page 16, Section 1:11, we find that the retainer in this case was a nonrefundable retaining fee for accepting the case.

The next issue is the fairness of the contract. While cases directly on point do not abound, it is the general rule, referred to in many text authorities, that, prior to employment and the formation of the fiduciary relationship, compensation for services may be fixed by contract; and, in the absence of fraud or overreaching, the contract will be enforced without the attorney showing it is fair and reasonable. See 1 Speiser, *supra,* at page 26, Section 1:22; 7 American Jurisprudence 2d, 169, Attorneys at Law, Section 210; 6 Ohio Jurisprudence 3d, 694, Attorneys at Law, Section 156.

After the establishment of the fiduciary relationship, the attorney has the burden to establish fairness and reasonableness.

We hold, however, that an attorney, as an officer of the court and subservient to its canons, cannot call upon the courts to enforce a contract, although not fraudulent, which is over-reaching, unconscionable, unreasonable or unfair. In Ohio, the Supreme Court of Ohio has adopted the Code of Professional Responsibility.[2] In the Preface to said Code, it is stated that "[t]he Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive * * * "; however, "[t]he Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character * * * [and] state the minimum level * * * below which no lawyer * * * [should act] without being subject to disciplinary action." DR 2-106, "Fees for Legal Services," provides, in pertinent part, as follows:

"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

---

[2] Section 2, Article IV of the Ohio Constitution provides, in part, as follows:
"(B)(1) The supreme court shall have original jurisdiction in the following:
" * * *

"(g) Admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law."

"(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. * * * "

Following paragraph (B) of DR 2-106, there is an enumeration of the criteria to determine reasonableness. The fact that the Ohio Supreme Court has adopted the Code of Professional Responsibility distinguishes this case from those cases which rest on rules of conduct adopted by bar associations; and, the adoption of the Code sanctions the holding that a court of law should not lend its support to the enforcement of a contract which may violate a Supreme Court Disciplinary Rule.

We hold that a contract made before employment places the burden on the client to establish the defense of unreasonableness or unfairness. See 2 Speiser, *supra,* at page 474, Section 18:12; 7A Corpus Juris Secundum 681, Attorney and Client, Section 346. This defense, while available to the defendants, also places upon them the burden of assertion and persuasion concerning the alleged "unreasonableness" of the retaining fee.

We now turn to that portion of the fee relative to hours. We note that the agreement in question was not for an "agreed fee." While there was an agreement as to the hourly rate as well as to the retaining fee, there was no agreement as to the number of hours to be expended. We hold that, under the agreement, the burden of proving that " * * * [t]he time * * * [was] fairly and properly used * * * ," 1 Speiser, *supra,* at page 308, Section 8:6, and the burden of showing the reasonableness of work hours devoted to the defendants' case is on the plaintiff. 7 American Jurisprudence 2d 184, Attorneys at Law, Section 238; *Laff* v. *Chapman Performance Products, Inc.* (1978), 63 Ill. App. 3d 297, 379 N.E. 2d 773. While plaintiff filed an affidavit in support of his motion for summary judgment, he did not establish reasonableness as to hours; and, the conclusory terms in the affidavit on this issue do not qualify as a Civ. R. 56(E) factual statement which had to be controverted by the defendants.

For the foregoing reasons and to the extent thereof, we find appellants' assignments of error to be well taken.

The judgment is reversed and said cause is remanded to

the Sylvania Municipal Court for further proceedings consistent with this opinion.

*Judgment reversed
and cause remanded.*

BROWN and CONNORS, JJ., concur.