JOURNAL ENTRY AND OPINION
Defendant-appellant/cross-appellee Fred Siegel Co., L.P.A. (Siegel), appeals from the February 8, 2000 bench trial judgment against it and in favor of plaintiff-appellee/cross-appellant Reminger Reminger Co., L.P.A. (Reminger). Cross-appellant Reminger appeals from the interest determination awarded it in that same judgment. For the reasons adduced below, we affirm in part, and reverse and remand in part.
The litigation between the parties concerned a legal fee dispute between the two law firms.
The facts indicate that Siegel retained the services of Reminger to aid, as co-counsel, in the collection of overdue attorney fees owed Siegel by former Siegel clients. The fee agreement, which was approved on May 15, 1997, by Mr. Fred Siegel as President of the Siegel firm, provided Reminger an hourly rate of $150.00 for an associate and $200.00 for a partner in addition to Siegel paying any out of pocket expenses incurred during the litigation. Siegel was offered a contingency fee arrangement, instead of an hourly rate structure, but declined. After the twenty Shaker Heights Municipal Court cases had been reduced to judgment, but while the remaining fourteen cases were pending in several municipal courts and the Cuyahoga County Common Pleas Court, Siegel terminated Reminger's representation and removed Reminger as co-counsel from the remaining pending cases.
Reminger filed its Complaint against Siegel on October 1, 1998, seeking $7,633.90 in legal fees, plus statutory interest, owed pursuant to the fee agreement, but which Siegel had refused to pay on the grounds that the fee was excessive in light of the[1] amount recovered from Siegel's former clients. Siegel filed its Answer on November 30, 1998, generally denying the amount allegedly owed Reminger. The matter proceeded to a bench trial in August of 1999, and the trial court issued its judgment on November 9, 1999. On November 24, 1999, Siegel filed a motion requesting Findings of Fact and Conclusions of Law. On February 7, 2000, the trial court filed Findings of Fact and Conclusions of Law, which state in pertinent part the following:
 FINDINGS OF FACT 1. In May 1997, Fred Siegel, Co., L.P.A. (Siegel), through its president and sole shareholder, Siegel, and Associate, Jay Siegel, retained Reminger to serve as counsel in over thirty (30) civil lawsuits filed by Siegel to collect Attorney Fees owed to Siegel by former clients.
 2. The written Retention Agreement between Reminger and Siegel was drafted by Andy Kabat of Reminger on April 8, 1997 and accepted by Siegel on May 15, 1997.
 3. Pursuant to the negoiated (sic) terms of the Retention Agreement, Siegel agreed to pay Reminger for its services at the rate of $150.00 per hour for Associates and $200.00 per hour for Partners.
 4. At all relevant times, Andy Kabat was an Associate and billed at the agreed upon rate of $150.00 per hour.
 5. Pursuant to the Retention Agreement, Reminger provided legal services to Siegel from May 1997 to June 1998, in various jurisdictions, including the Shaker Heights Municipal Court, Bedford Municipal Court, Cleveland Municipal Court and Cuyahoga County Court of Common Pleas.
 6. The lawsuits pending in Shaker Heights Municipal Court were consolidated for purposes of trial and proceeded to trial on October 29, 1997 and October 30, 1997.
 7. On August 12, 1997, Reminger sent a fee statement to Siegel in the amount of $3,690.00 for Mr. Kabat's work on the various matters.
 8. The August 12, 1997 statement identified all individual tasks performed by Mr. Kabat, quantified the time charged for each task, and was based upon the agreed rate of $150.00 per hour for Mr. Kabat's services.
 9. The August 12, 1997 statement was paid in full by Siegel.
 10. On October 21, 1997, Reminger sent a statement to Siegel for fees and expenses in the amount of $4,395.00 for services rendered by Mr. Kabat in the various matters.
 11. The October 21, 1997 statement identified all individual tasks performed by Mr. Kabat, quantified the time charged for each task, and was based upon the agreed upon rate of $150.00 per hour for Mr. Kabat's services.
 12. Siegel paid $4,365.00 of the $4,395.00 statement, leaving a balance due from the October 21, 1997 statement of $30.00.
 13. On November 25, 1997, Reminger sent a statement for fees and expenses in the amount of $14,798.90 to Siegel in connection with Reminger's representation of Siegel in the consolidated Shaker Heights matters.
 14. The November 25, 1997 statement identified all individual tasks performed by Mr. Kabat, quantified the time charged for each task, and was based upon the agreed upon rate of $150.00 per hour for Mr. Kabat's services.
 15. Siegel paid $10,000.00 of the $14,798.90 statement, leaving a balance due from the November 25, 1997 statement of $4,798.90.
 16. On April 6, 1998 Reminger sent a statement for fees and expenses to Siegel in the amount of $2,835.00 in connection with the matter of Fred Siegel Co., L.P.A. v. William J. Sukenik, Cuyahoga County Court of Common Pleas, Case No. 319600.
 17. The April 6, 1998 statement identified all individual tasks performed by Mr. Kabat, quantified the time charged for each task, and was based upon the agreed upon rate of $150.00 per hour for Mr. Kabat's services.
 18. Siegel paid nothing toward the $2,835.00 statement, leaving a balance due from the April 6, 1998 statement of $2,835.00.
 19. Reminger fully and completely performed its obligations pursuant to the terms of the Retention Agreement with Siegel.
 20. Fred Siegel paid the amounts billed through November 25, 1997 and refused to pay the remaining amounts totaling $7,633.90.
 21. Fred Siegel did not question the attorneys, (sic) experience, time, competence, or hourly rates as he paid the bills as submitted and continued the attorney-client relationship.
 22. Fred Siegel never questioned the amounts billed until after the results of the Shaker Heights cases, November 1997.
 23. Fred Siegel continued the attorney-client relationship after the Shaker Heights Municipal court trials and there were subsequent bills for representation in the Cuyahoga County Court of Common Pleas representation.
 24. Fred Siegel's actions support the enforcement of the contract because he continued to perform and expected Reminger Reminger to perform in accordance with the contract terms.
 25. Siegel, despite repeated demand, and without justification, has failed to pay Reminger as required pursuant to the terms of the Retention Agreement.
CONCLUSION OF LAW
* * *
 4. Reminger fully and completely performed its contractual obligations with Siegel pursuant to the terms of the Retention Agreement, and did not breach its contract with Siegel.
 5. Siegel materially breached the contract with Reminger by failing, without justification, to pay Reminger the full amount of its itemized statements for legal fees and expenses.
* * *
 7. As a result of the material breach of the contract by Siegel, Reminger was damaged in the amount of $7,633.90, the unpaid amount of its October 21, 1997, November 25, 1997 and April 6, 1998 statements.
 8. The fees and expenses charged by Reminger were reasonable in light of the services performed by Mr. Kabat, the underlying issues involved in these various matters, the level of skill required of an attorney working on these matters, the fees customarily charged for similar services and Mr. Kabat's experience and ability.
 9. The full involvement of Defendant's law office in the proceedings and trials supports that no expert testimony as to the reasonableness of the attorney fees is required. See Hermann, Cahn 
Schnider v. Viny (1987), 420 Ohio App.3d 132.
 10. Based upon the foregoing, Reminger Reminger is awarded judgment as follows:
 a. Recovery in the amount of $7,633.90 representing the unpaid balance on its October 21, 1997 statement ($30.00), November 25, 1997 statement ($4,798.90), and April 6, 1998 statement ($2,835.00).
 b. Pursuant to O.R.C. 1343.03, interest at the rate of 10% on the unapid amount from November 9, 1999, on $7,633.90.
IT IS SO ORDERED.
The Statement of the Evidence or Proceedings, made pursuant to App.R. 9(C), and filed in this appellate court on May 18, 2000, states in pertinent part the following:
 The Court having reviewed Defendant's statement of evidence and proceedings and Plaintiff's Objections, settles and approves the following statement of evidence in this matter. It is therefore ordered, adjudged and decreed that the following comprises the statement of the evidence in this case.
 DEFENDANT'S STATEMENT OF EVIDENCE AND PROCEEDINGS This case arises out of an attorney-client fee dispute between Plaintiff, Reminger and Reminger Co., L.P.A. (Plaintiff) and Defendant, Fred Siegel Co., L.P.A., (Defendant). After Defendant refused to pay the invoices issued by Plaintiff, Plaintiff filed a claim in the Shaker Heights Municipal Court. Defendant filed an Answer, denying the relevant allegations. Plaintiff issued discovery to Defendants and took the deposition of Fred Siegel. Upon the completion of discovery, Plaintiff moved for summary judgment. Defendant opposed summary judgment and the Court denied Plaintiff's Motion. Plaintiff and Defendant submitted trial briefs and the case proceeded to trial. At trial, Plaintiff and Defendant offered certain testimony and exhibits into evidence.
The Plaintiff offered the following into evidence:
 A. The testimony of Mr. Andrew A. Kabat, Esq. Mr. Kabat testified that:
 1. While in the employment of Plaintiff as an associate attorney, Kabat was contacted by the office of Defendant for the purpose of retaining the legal services of Plaintiff.
 2. Kabat understood the prospective representation to concern the civil litigation of certain collection matters in various jurisdictions in Cuyahoga County.
 3. The parties agreed to an hourly fee agreement of $150 per hour for Kabat and $200 per hour for any partners who worked on the case.
 4. Kabat drafted and signed a fee agreement outlining the foregoing terms, which fee agreement was then executed and returned by Fred Siegel.
 5. Kabat performed certain tasks in the course of his employment including depositions, correspondence, telephone conferences, and trial work.
 6. Kabat issued various interim invoices outlining the time and nature of services rendered.
 7. Kabat performed the services identified in said invoices and the invoices reflect the time actually spent on behalf of Siegel.
 8. Plaintiff, by and through Kabat, performed as required pursuant to the fee agreement.
 9. Defendant refused to pay the remaining balance of $7,633.90 collectively indicated on the invoices in question.
 10. Kabat has been practicing law for approximately five (5) years and has sufficient experience to assess the propriety of the fees charged to Siegel.
11. The fees charged to Siegel are reasonable.
 12. Kabat is employed by the law firm of Reminger 
Reminger Co., L.P.A.
 13. Kabat's areas practice include real estate and litigation, which has included participation in five to six (5 to 6) trials a year.
 14. At the time of Siegel's retention of Reminger 
Reminger Co., L.P.A., Kabat offered to take Siegel's cases on a contingency basis.
 15. Siegel refused to proceed with the cases on a contingency basis, opting instead to be charged at an hourly rate.
 16. Kabat represented Siegel in thirty-four (34) lawsuits, including cases that were pending in Cuyahoga County Court of Common Pleas, Shaker Heights Municipal Court, Garfield Heights Municipal Court, and Cleveland Municipal Court.
 17. Of the thirty-four (34) cases, twenty (20) were tried together in Shaker Heights Municipal Court on October 29 and 30, 1997.
 18. Jay Siegel, an associate of Siegel's law firm and Fred Siegel's nephew, served as co-counsel on all cases.
 19. Kabat spoke with Jay Siegel by telephone on numerous occasions regarding the status of the cases.
 20. Kabat met with Jay Siegel in person for numerous strategy meetings and consulted Jay Siegel regarding retention of experts and the taking of depositions.
 21. The Defendants' production of documents in these cases required that Kabat review boxes of documents.
 22. Prior to trial and subsequent to consulting with Jay Siegel, Kabat entered into written stipulations with the defendants' counsel which minimized the time and expense required for trial.
 23. The Shaker Heights Municipal Court cases were tried together on October 29 and 30, 1997.
 24. After the trial, Kabat continued to perform legal services for Siegel, working primarily on the Sukenik case before the Cuyahoga County Court of Common Pleas, which was set for trial on April 27, 1998.
 25. Kabat consulted with Jay Siegel on the taking of depositions in the Sukenik case, and conducted the deposition of Bill Sukenik.
 26. On November 25, 1998, Kabat sent an invoice for services rendered to Siegel, including fees for trying the twenty (20) Shaker Heights cases.
 27. Kabat produced itemized billing statements that had been provided to Siegel, the entries of which reflected Kabat's actual time expended and work actually performed by him on behalf of Fred Siegel Co.
 B. The testimony of Mr. Jay P. Siegel. Mr. Siegel testified that:
 1. The fee agreement properly reflects the nature and terms of Plaintiff's employment.
 2. Kabat performed a range of tasks indicated in Kabat's testimony above.
 C. Plaintiff's Exhibits Plaintiff then offered into evidence certain documents and exhibits in support of the foregoing testimony, including, but not limited to:
 1. An executed copy of a document purported to be a fee agreement between Plaintiff and Defendant.
 2. Various invoices purporting to indicate the time and nature of the tasks performed by Plaintiff and the fees due therefrom.
 3. Various other correspondence between Kabat and Fred Siegel.
D. The Defendant offered the following into evidence:
The testimony of Mr. Fred Siegel. Mr. Siegel testified that:
 1. Siegel has substantial experience as an attorney, having practiced law for approximately forty (40) years.
 2. Siegel is the President and sole shareholder of Defendant.
 3. In his experience and opinion, the fees charged by Plaintiff are excessive under the law.
 4. On more than one occasion, at the conclusion of Plaintiff's representation, Siegel communicated to Kabat that the fees were excessive.
 5. The Defendant paid over $18,085 in fees to Plaintiff over the course of Plaintiff's employment.
 6. The fees Plaintiff charged Defendant were in excess of 90% of the recovery obtained.
 The exhibits offered on behalf of the Plaintiff also indicate that the Defendant refused to pay at least one interim bill Fred Siegel believed to be excessive.
 On February 7, 2000, the Court issued Findings of Fact and Conclusions of Law, granting judgment to the Plaintiff in the amount of $7,633.90.
 On March 6, 2000, Defendant appealed this Court's decision to the Court of Appeals of Ohio, Eighth Appellate District. This appeal was designated as Case Number 77712.
IT IS SO ORDERED.
Siegel presents four assignments of error for review, each of which attacks the reasonableness and award of Reminger's fees. These assignments will be addressed jointly.
 1. THE TRIAL COURT ERRED IN FAILING TO REQUIRE THE PLAINTIFF-ATTORNEY SEEKING TO RECOVER FEES FROM THE DEFENDANT-CLIENT TO PROVE THAT THE TIME EXPENDED ON BEHALF OF THE CLIENT WAS FAIR, PROPER, REASONABLE, AND CUSTOMARY.
 2. THE TRIAL COURT ERRED IN FAILING TO CONSIDER THE RESULTS OBTAINED BY THE PLAINTIFF-ATTORNEY ON BEHALF OF THE DEFENDANT-CLIENT WHEN DETERMINING THE REASONABLENESS OF FEES CHARGED BY THE ATTORNEY SEEKING RECOVERY.
 3. THE TRIAL COURT ERRED IN FINDING THAT THE FEES CHARGED BY PLAINTIFF-ATTORNEY IN EXCESS OF 90% OF DEFENDANT-CLIENT'S RECOVERY WERE REASONABLE.
 4. THE TRIAL COURT ERRED IN FAILING TO REQUIRE THE PLAINTIFF-ATTORNEY TO OFFER THE TESTIMONY OF AN EXPERT WITNESS OR OTHER CORROBORATIVE EVIDENCE TO SUSTAIN THE PLAINTIFF-ATTORNEY'S BURDEN OF PROVING THE PROPRIETY OF THE TIME EXPENDED AND THE REASONABLENESS OF THE FEES CHARGED.
In a similar case involving a law firm suing to collect legal fees allegedly owed it, this court stated the following:
 As recently stated in Thompson, Hine Flory v. Pingue Properties, Inc. (March 29, 1996), 1996 Ohio App. LEXIS 1346, Franklin App. No. 95APE 07-881, unreported at 4:
 Other courts have held that, where a fee agreement exists, that contains the hourly rate as well as a retainer fee, the attorney seeking to recover fees must also demonstrate that the time spent was fairly and properly used, and that the work hours devoted to the case were reasonable. Jacobs v. Holston (1980), 70 Ohio App.2d 55, 434 N.E.2d 738; Brooks v. Houston (Sept. 14, 1995), 1995 Ohio App. LEXIS 3961, Franklin App. No. 95APG02-180, unreported (1995 Opinions 3872). And further to the point, see Skidmore Assoc. Co. v. Southerland (1993), 89 Ohio App.3d 177, 180, 623 N.E.2d 1259:
 In general, the rule is that where the employment of an attorney is under an express, valid contract for an agreed fee, either for a specified amount or a specified percentage of a recovery, such contract is conclusive as to the amount of such compensation. See 6 Ohio Jurisprudence 3d (1978) 694, Attorneys at Law, Section 156. We note, however, that this case, as presented to the trial court, does not involve an agreed fee. While there was an agreement as to the hourly rate, the letter contract did not refer in any way to the number of hours to be expended. See Jacobs v. Holston (1980), 70 Ohio App.2d 55, 60, 24 Ohio Op. 3d 72, 75, 434 N.E.2d 738, 741-742. In that there is no agreed fee, the burden of proving that the time was fairly and properly spent and that a reasonable and customary number of hours were devoted to the clients' case is on the law firm as plaintiff. Id. Based on the agreement, however, the $150-per-hourrate need not be shown to be a reasonable rate.
 See, also, Climaco, Seminatore, Delligatti 
Hollenbaugh v. Carter (1995), 100 Ohio App.3d 313, 323, 653 N.E.2d 1245 (even though a fee agreement existed, "the burden of proving that the time expended was fairly and properly used and the burden of showing the reasonableness of work hours directed to the case rest on the attorney. * * * [A] trial court must base its determination of reasonable attorney fees upon actual value of the necessary services performed, and there must be some evidence which supports the court's determination.") (Italicization added.)
Heller v. McLaughlin (Sept. 26, 1996), Cuyahoga App. No. 70072, unreported, 1996 Ohio App. LEXIS 4179, at 22-24. See, also, Stafford v. Skinner (Oct. 31, 1996), Cuyahoga App. No. 68597, unreported, 1996 Ohio App. LEXIS 4803, at 18-20.
The factors to be considered by the trial court in the determination of reasonable attorney fees upon actual value of the necessary services performed were stated in Stafford v. Skinner, supra, at 19:
 Some of the factors to be considered were set forth in Pyle v. Pyle (1983), 11 Ohio App.3d 31, 35, 463 N.E.2d 98: "1) time and labor, novelty of issues raised, and necessary skill to pursue the course of action; 2) customary fees in the locality for similar legal services; 3) result obtained; and 4) experience, reputation and ability of counsel. * * *" See Climaco; DR 2-106(B). A court should then calculate the number of hours reasonably expended and multiply that sum by a reasonable hourly fee. See Bittner v. Tri-County Toyota (1991), 58 Ohio St.3d 143, 569 N.E.2d 464.
Pursuant to Skidmore Assoc. Co. v. Southerland, supra, and the presence of the approved fee agreement, the hourly fee of $150 for attorney Kabat's legal services need not be shown to be a reasonable rate. However, because the fee agreement in issue does not refer to the number of hours to be expended, there can be no agreed fee in regard to the time expended, and Reminger bears the burden of proving that the time was properly spent and that a reasonable and customary number of hours were devoted to the client's case . . . Id.; and Jacobs v. Holston, supra.
The evidence offered at trial indicates that Siegel did not complain about the Reminger billing until after the conclusion of the Shaker Heights Municipal Court cases. See Findings of Fact, paragraph 21-22.[2]
Attorney Fred Siegel testified at trial that he repeatedly complained about the excessive nature of the legal fees at the conclusion of Reminger's representation (which, according to appellant at page 4 of his brief, was in May of 1998[3]), which the trial court could interpret as saying that he did not complain about the excessiveness of the fees while Siegel was receiving periodic billings and prior to the termination of the legal representation relationship. As can be seen from the Findings of Fact and the Statement of Proceedings, there was competent and credible evidence presented by Reminger, as found by the trial court, concerning the reasonableness of attorney Kabat's time computations, efforts expended, novelty of the issues involved, counsel's skill and ability in pursuit of the representation, and results obtained. From the less than adequate record provided, appellant cannot demonstrate the error of which he complains, namely, that the court did not consider the proper factors in determining the reasonableness of the disputed fees. Thus, the presumption of validity and regularity attends the court's determination that the fees were reasonable. See, Corsaro, Giganti 
Assoc. v. Stanley (Sept. 21, 2000), Cuyahoga App. No. 77201, unreported, 2000 Ohio App. LEXIS 4299, at 5-6.
The final question with regard to the appellant's assignments of error is whether attorney Kabat could testify as an expert with regard to the reasonableness of the Reminger fees, or should the trial court have required an independent expert apart from Kabat to testify regarding the reasonableness of the fees? There is some competent and credible evidence to suggest that Siegel did not complain about the excessive nature of the fee until he terminated Reminger's legal services in early May of 1998. There is no documentary evidence from Siegel in the record indicating a dispute concerning the Reminger fee as excessive or unreasonable. The court could properly discount Siegel's allegations that he complained repeatedly about the excessive nature of the disputed fee prior to Reminger's termination. Having not complained to Reminger during the tenure of the attorney/client relationship to express dissatisfaction with the claimed fees, while at the same time Reminger was conducting itself properly as the client and advising Siegel of the status of the representation, no independent expert testimony apart from attorney Kabat is required to establish the reasonableness of the fees. See Stafford 
Assoc. v. Skinner, supra, 1996 Ohio App. LEXIS 4803, at 19-20, citing Climaco, Seminatore, Delligatti Hollenbaugh v. Carter, supra, and Hermann, Cahn Schneider v. Viny (1987), 42 Ohio App.3d 132.
The appellant's four assignments are overruled.
We now turn our attention to the Reminger cross-appeal.
The lone cross-assignment of error provides the following:
 THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT INTEREST ON THE UNPAID ATTORNEY FEES BACK TO THE DATE WHEN THE INTEREST BECAME DUE AND OWING.
As previously detailed in the trial court's orders, the trial court awarded statutory 10% interest commencing November 9, 1999, the date the trial court pronounced its judgment in the case sub judice. Cross-appellant, seeking pre-judgment interest, argues that pursuant to R.C. 1343.03(A), which authorizes 10% interest when money becomes due and payable upon any account or judgment for money damages arising under a contract, the statutory interest should have commenced on the following billing statement dates which went unpaid and arose from the fee agreement contract: either October 21, 1997, November 25, 1997, or April 6, 1998.
In Bain Builders, Inc. v. Rockport Retirement Limited Partnership (July 22, 1999), Cuyahoga App. Nos. 74486 and 74672, unreported, 1999 Ohio App. LEXIS 3388, at 21-22, this court addressed the issue of pre-judgment interest pursuant to R.C. 1343.03(A) in the context of a breach of contract action:
 The Supreme Court has held that in determining whether to award prejudgment interest pursuant to R.C. 1343.03(A) a court need only ask one question: Has the aggrieved party been fully compensated? Royal Elec. Constr. Corp. v. Ohio State Univ. (1995), 73 Ohio St.3d 110, 116, 652 N.E.2d 687. In Commsteel, Inc. v. Bender Constr., Inc., 1998 Ohio App. LEXIS 5785 (Dec. 3, 1998), Cuyahoga App. No. 74189, unreported, this court followed Royal Elec., supra, and noted that the Supreme Court stated:
 An award of prejudgment interest encourages prompt settlement and discourages defendants from opposing and prolonging, between injury and judgment, legitimate claims. Further, prejudgment interest does not punish the party responsible for the underlying damages, * * * but, rather, it acts as compensation and serves ultimately to make the aggrieved party whole. Indeed, to make the aggrieved party whole, the party should be compensated for the lapse of time between accrual of the claim and judgment.
 Thus, an award of prejudgment interest is not left to the discretion of the trial court when the action is based in contract. See Dwyer Elec., Inc. v. Confederated Builders, Inc., 1998 Ohio App. LEXIS 5490 (Oct. 29, 1998), Crawford App. No. 3-98-18, unreported.
 However, the trial court, in its discretion, must make the factual determination as to when interest commences to run. The determination as to when the claim becomes due and payable, and what legal rate of interest should be applied, is within the sound discretion of the trial court. Dwyer, supra, citing to Royal Elec., supra and Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339, 342, 695 N.E.2d 1140. (Italicization added.)
We conclude that Reminger is correct based upon the application of pre-judgment interest pursuant to R.C. 1343.03(A); the fees owed Reminger were due and payable prior to the date the trial court pronounced its judgment so as to make Reminger whole for the lapse of time between accrual of the action and judgment. The matter of determining when the claims became due and payable is complicated, however, because the three billing statements attached to the Complaint contain different amounts owed for differing work performed. For example, the April 6, 1998, interim billing statement sought $2,835 (18.9 hours @ $150 per hour) for work performed on Fred Siegel Co., L.P.A. v. Sukenik, Cuyahoga County Common Pleas Court Case No. 319600; nothing was paid on this billing statement by Siegel. The November 25, 1997 interim billing statement sought fees owed for work from October 20, 1997, up to the conclusion of the trial in the consolidated Shaker Heights Municipal Court cases.[4]
The October 21, 1997 interim billing statement sought fees owed for work from August 11, 1997 to October 16, 1997, in the consolidated Shaker Heights Municipal Court cases.[5] Accordingly, the matter of pre-judgment interest is reversed and remanded for the trial court to determine when the three billing claims attached to the Complaint became due and payable and to set forth the commencement of pre-judgment interest date(s) and, if applicable, the judgment amount for each of the three billing statements. Post-judgment interest of 10% remains in place and is unaltered.
Plaintiff-appellant/cross-appellee Siegel's assignments are overruled.
Defendant-appellee/cross-appellant Reminger's cross-appeal is found to have merit.
Judgment affirmed in part, and reversed and remanded in part.
This cause is affirmed in part, and reversed and remanded in part.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
MICHAEL J. CORRIGAN, J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Reminger concedes that it billed Siegel a total of $25,718.90 for co-counsel representation in thirty-four lawsuits and that Siegel had paid $18,085 of that billing. See appellee's brief at 4, and Statement of the Evidence, at item 16. Plaintiff's Exhibit 30, an itemization of the twenty consolidated cases litigated by Reminger/Siegel in the Shaker Heights Municipal Court, indicates that the total amount awarded in those Shaker Heights Municipal Court collection matters was $27,442.85 ($26,089.65 in compensatory damages, plus $1,353.20 in awarded costs). Judgments from the remaining fourteen non-Shaker Heights Municipal Court cases is not evident from the record, but the Reminger total billing of $25,718.90 undoubtedly relates, in part, to these fourteen cases. Thus, appellant-Siegel's attempt to depict the total billing amount as 94% of the amount recovered in the Shaker Heights cases, without taking into account the remaining fourteen cases which would undoubtedly lessen the appellant's percentage figure, is misleading and an inaccurate representation of the work efforts and results obtained by attorney Kabat of Reminger.
[2] The panel notes that the Shaker Heights Municipal Court Cases were reduced to final judgment on March 18, 1998. See Plaintiff's Exhibits 10-29, which are copies of the journalized final entries from those cases.
[3] Plaintiff's Exhibit 35, a letter from attorney Fred Siegel to attorney Kabat dated May 7, 1998, in which Siegel confirmed the termination of Reminger and authorized Kabat to submit notices of withdrawal as co-counsel in pending cases. There is no mention of the fees being excessive in this letter, or any other communication between the parties in evidence.
[4] The November 25, 1997 billing was partially paid by Siegel, leaving a balance owing of $4,798.90 for that statement. See Findings of Fact, at items 13-15.
[5] The October 21, 1997 billing was partially paid by Siegel, leaving a balance owing of $30 for that statement. See Findings of Fact, at items 10-12.