DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Roger J. Donnamiller, appeals from an entry of summary judgment in favor of appellee, attorney Barry W. Vermeeren. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Appellant is a professional real estate broker. In July 2002, appellant, while shopping for health insurance, consulted with Dan Utz of Utz Professional Services *Page 2 
in New Washington, Ohio. Appellant and Utz jointly completed an application for health insurance with Fortis, a medical insurance provider. While they were completing the application, appellant told Utz that he had been diagnosed with elevated cholesterol in the past, but that he had been successful in losing weight, was exercising, had changed his diet, and had lowered his cholesterol. Appellant omitted any mention of the fact that he had been prescribed medication to treat the problem.
 {¶ 3} Based on appellant's disclosures, Utz (who was filling out the application as appellant verbally answered the medical questions) answered "no" to the following application questions:
 {¶ 4} "WITHIN THE LAST 10 YEARS HAS ANY PROPOSED INSURED: 18. HAD ANY DIAGNOSIS OF, RECEIVED TREATMENT FOR, OR CONSULTED WITH A PHYSICIAN CONCERNING:
 {¶ 5} "* * *
 {¶ 6} "b) The heart or circulatory system including but not limited to * * * elevated cholesterol? (provide last blood pressure reading and cholesterol level if known)
 {¶ 7} "* * *
 {¶ 8} "22. Had surgery or has diagnostic testing, treatment or surgery been recommended or scheduled that has not been completed?
 {¶ 9} "* * * *Page 3 
 {¶ 10} "24. Had an electrocardiogram, chest x-ray, or blood test or any other diagnostic testing of any kind or been hospital confined in the past 10 years? If yes, give name of physician or hospital and results."
 {¶ 11} In another section of the application, appellant provided that he had last seen his physician, Dr. James Rosso, in 1998 and that his blood work was "good". In fact, evidence contained in the record shows that appellant had blood work done in 1998, 1999, and 2000, and each time his cholesterol was high.
 {¶ 12} After Utz finished filling out the application, appellant signed it. Eventually, the premium was paid and the policy was issued.
 {¶ 13} In early 2004, appellant suffered a heart attack. The expenses for his treatment totaled in excess of $130,000. In July 2004, appellant was notified of a denial of coverage by Fortis.
 {¶ 14} Shortly after the denial, appellant contacted appellee regarding his dispute with Fortis. According to affidavit testimony by appellant, he and appellee "discussed the case and how [appellee] would be paid." Appellant additionally testified that he and appellee "talked about an hourly contract but [appellee], somewhat forcefully, steered [appellant] away from it because of his opinion that the potential hourly bill might run from $40,000 to $50,000."
 {¶ 15} On August 25, 2004, appellee presented appellant with a contingent fee agreement. Appellant asked for time to think about whether he wanted appellee to handle the case on an hourly basis or on a one-third contingent fee basis. Although appellant *Page 4 
claims he was able to pay a reasonable fee for appellee's services, approximately three weeks after receiving the contingent fee agreement, he signed the agreement and returned it to appellee.
 {¶ 16} The agreement relevantly provides as follows:
 {¶ 17} "The said Attorney, for the attorney's fees hereinafter provided, agrees to undertake the representation of said client and to act as his/her attorney in negotiating for a settlement and if said cannot be effected, in bringing, conducting and prosecuting an action against Fortis + Daniel Utz to recover damages for lack of insurance as a result of a failure to properly do [insurance application], which occurred on or about the 7-1-02.
 {¶ 18} "As fees for such legal services, both parties hereto agree that said attorney shall receive a sum of money equal toThirty-three and One-third percent (33 1/3%) of any recovery had in the case if pleadings are filed in court, or alternatively, if such claim is settled prior to pleadings being filed in court. If there is no recovery client will not have to pay any attorney's fees. Recovery to be set @ Medical Bills incurred since Feb/04 that would have been covered by Fortis Ins.
 {¶ 19} "In any event, it is agreed by and between both parties to this Agreement that from any settlement or recovery Client will be responsible for expenses incurred in the prosecution of the above-described claim and/or suit. * * *"
 {¶ 20} On or about September 29, 2004, appellee sent a letter to Fortis seeking settlement. In the letter, appellee notified the company that Utz had admitted to having known about appellant's elevated cholesterol at the time the insurance application was *Page 5 
completed. Attached to the letter was a memorandum of law which purported to show that once Utz notified appellant that his insurance application was being placed with Fortis, Utz's status changed from independent agent to agent of Fortis.
 {¶ 21} In a letter dated November 9, 2004, Fortis notified appellee that it had denied coverage on the grounds that appellant's medical records reflected a material health history that had not been disclosed on the enrollment form, specifically a history of elevated and uncontrolled cholesterol without completion of the recommended follow-up. Fortis further advised that a premium refund in the amount of $6,060.60 had been issued to appellant on August 11, 2004.
 {¶ 22} Appellee responded to the Fortis correspondence with two additional letters reiterating the fact that appellant had been truthful in answering Utz's questions, and that (at least for purposes of vicarious liability) Utz was Fortis's agent at the time the application was taken. In the latter of the two letters, appellee additionally enclosed a copy of R.C. 3923.14. R.C. 3923.14 provides that a false statement in an application for health insurance will not bar recovery under the policy unless it is clearly proved that such false statement is willfully false and that it was fraudulently made.
 {¶ 23} Finally, in a letter dated February 18, 2005, Fortis agreed to reinstate their offer of coverage for appellant and to pay his medical bills upon payment of the $6,060.60 premium. Appellant paid the required premium, and on March 26, 2005, Fortis paid appellant's bills. In addition, appellee negotiated a side settlement with the major creditor, EMH Regional, to pay appellant $6,000 for the insurance premium. *Page 6 
 {¶ 24} After the bills were paid, appellee informed appellant that he was finished with the case and that appellant owed him $44,000. Appellant, believing that appellee was obligated to go further — specifically to pursue Utz and Fortis for the attorney's fees — refused to pay.
 {¶ 25} Appellee filed his complaint against appellant on December 23, 2005. The complaint sought recovery of in excess of $44,000 in legal fees pursuant to the contingent fee contract. After discovery was completed, appellee filed a motion for summary judgment. Briefs for both sides were filed, and on May 2, 2007, the trial court issued its decision in favor of appellee. Appellant timely filed a notice of appeal. In this appeal, he raises the following as his sole assignment of error:
 {¶ 26} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF FOR A NUMBER OF DIFFERENT REASONS."
 {¶ 27} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 28} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *" *Page 7 
 {¶ 29} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party.Ryberg v. Allstate Ins. Co. (July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son, Inc. v. Midwestern Indemnity Co. (1992),65 Ohio St.3d 621, 629.
 {¶ 30} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 31} Appellant's primary argument seems to be that appellee's employment contract with appellant is unenforceable because appellee acted unethically in taking appellant's case against Fortis on a contingency basis where appellant was able to pay a reasonable hourly fee.
 {¶ 32} When considering the enforceability of an employment contract between an attorney and client, we are mindful that "an attorney, as an officer of the court and subservient to its canons, cannot call upon the courts to enforce a contract, although not fraudulent, which is overreaching, unconscionable, unreasonable or unfair." Jacobs v.Holston (1980), 70 Ohio App.2d 55, 59. To determine the fairness of the attorney/client *Page 8 
employment contract in question, we look to the Code of Professional Responsibility that was formerly adopted by the Supreme Court of Ohio. Id., at 59-60.[1]
 {¶ 33} Contained in the Code are so-called "Ethical Considerations" and "Disciplinary Rules". The Ethical Considerations are "aspirational in character and impose no cognizable legal duties". State ex rel.Holloman v. Phillips, 100 Ohio St.3d 70, 2003-Ohio-5063, at ¶ 5. The Disciplinary Rules, by contrast, are "mandatory in character," and state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action." (Emphasis omitted.) Columbus BarAssn. v. Schlosser (1995) 74 Ohio St.3d 174, 177-178, quoting Preface, Code of Professional Responsibility. This court has held that a court of law should not lend its support to the enforcement of a contract which may violate a Supreme Court Disciplinary Rule. Jacobs, supra, at 60.
 {¶ 34} The Disciplinary Rule that is at issue in the instant case is DR 2-106. DR 2-106, which deals with fees for legal services, pertinently provides:
 {¶ 35} "(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
 {¶ 36} "(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following: *Page 9 
 {¶ 37} "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 {¶ 38} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 39} "(3) The fee customarily charged in the locality for similar legal services.
 {¶ 40} "(4) The amount involved and the results obtained.
 {¶ 41} "(5) The time limitations imposed by the client or by the circumstances.
 {¶ 42} "(6) The nature and length of the professional relationship with the client.
 {¶ 43} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 44} "(8) Whether the fee is fixed or contingent."
 {¶ 45} At the outset, we note that contingent fee arrangements are generally permitted in civil cases. Mueller v. City of Vandalia (Mar. 31, 1999), 2d Dist. No. 17285. By choosing a contingent fee arrangement, as opposed to an hourly fee arrangement, a client reduces the risk to himself that is involved in litigation. As stated by this court inLandis v. Grange Mut. Ins. Co., (Feb. 21, 1997), 6th Dist No. E-96-034,
 {¶ 46} "Contingency fee agreements serve an important function in American life. Such agreements permit persons of ordinary means access to a legal system which can sometimes demand extraordinary expense.Central Trust Co. v. Warburg (1995), 104 Ohio App.3d 186, 190. The mechanism by which this is accomplished is a contract between client and attorney whereby some or all of the risk involved in litigation is *Page 10 
shifted to the attorney. The quid pro quo for relieving the client of this risk is that the agreement normally calls for the attorney to receive a percentage of any possible recovery. This would result, generally, in a somewhat greater compensation than the attorney might ordinarily receive. * * * To be sure, the contingency percentage is an arbitrary figure but, like liquidated damages in other contracts, is proper because it is a bargained for result."
 {¶ 47} As in the instant case, the fee is typically a third of the total recovery. Landis, supra, at fn. 5.
 {¶ 48} Looking to the facts and circumstances surrounding the subject agreement, we find that appellant, a professional businessman, voluntarily chose to employ appellee under the contingency contract. His choice of contract, even if strongly influenced by the recommendation of appellee, was made unhurriedly after a three week period of consideration, and constituted a bargained-for allocation of risk.
 {¶ 49} In arguing that the contingency fee agreement was unfair in this case, appellant makes the following claims: First, that appellee somehow knew in August 2004 that the case against Fortis would be quickly and easily concluded; second, that appellee "obviously knew the law;" and third, that appellee "knew, at all times, that Utz was going to admit to filling out the form, either wrongfully or in good faith knowing about the cholesterol issue".
 {¶ 50} In response to appellant's claim that appellee "knew the law" at the time he gave the contract to appellant, appellee agrees, quoting caselaw which plainly *Page 11 
demonstrates that appellant's case — involving an application for insurance that contained materially inaccurate information and that was signed by appellant — was not nearly as clear-cut as appellee had indicated in his correspondence to Fortis when he was acting as appellant's advocate. The caselaw, as set forth in Buemi v. Mutual ofOmaha Ins. Co. (1987), 37 Ohio App.3d 113, relevantly provides as follows:
 {¶ 51} "Insurance policies are traditionally contracts uberrimaefidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Id., at 116, quoting Stipcich v. Metropolitan Life Ins.Co. (1928), 277 U.S. 311.
 {¶ 52} Buemi also stands for the proposition that "[a]n insured, making application for insurance, is bound by all the representations and warranties contained in the application even though he does not answer them specifically; having signed the application, he adopts and ratifies all statements appearing above his signature." Id., at 119, quoting Republic Mut. Ins. Co. v. Wilson (1940), 66 Ohio App. 522, at paragraph one of the syllabus.
 {¶ 53} Clearly, appellee's position in this action was not entirely supported under the law.
 {¶ 54} As to the testimony that Utz would actually give or the position he would ultimately take, appellee could not have known this information with any degree of certainty at the time he accepted appellant's case. *Page 12 
 {¶ 55} When all of the relevant circumstances are taken into consideration, we find that the underlying case against Fortis may well have been lost or settled for a fraction of the $133,543 in medical bills. Further, the loss of the case could well have come after depositions were taken of appellant, Utz, appellant's treating physicians, and Fortis medical underwriters, and after experts were hired and paid for by appellee. Certainly, the cost of pursuing appellant's case against Fortis could have generated thousands of dollars in expenses and hundreds of hours of appellee's time and still have been lost due to appellant's failure to inform Utz (and Fortis) that he had received medical treatment for high cholesterol and that his blood work was anything but "good."
 {¶ 56} Viewing the evidence most strongly in favor of appellant, reasonable minds can come to but one conclusion, and that is that the contingency contract in this case was both reasonable and enforceable.
 {¶ 57} We note that the record contains additional evidence, submitted by appellee, in the form of affidavit testimony by a local attorney, Kevin Zeiher. According to Zeiher, the contingent fee contract was "entirely appropriate" under the circumstances, and the results obtained in the underlying case were the best possible. Citing the factual dispute between Fortis and appellant, the uncertainty of recovery for appellant, the novelty and difficulty of the legal questions involved, and the experience and ability of appellee, Zeiher opined that the contingent fee agreement did not amount to an excessive fee in contravention of the DR 2-106. *Page 13 
 {¶ 58} Appellant contends that Zeiher's testimony was inadmissible and should have been excluded pursuant to Evid.R. 704, because it "attempted to instruct the court as to what the law was." We disagree. Such evidence, although unnecessary to a determination in this case, did not require exclusion. In Ohio, a trial court enjoys broad discretion when determining the admissibility of evidence; and such determinations will not be reversed absent an abuse of discretion. Brookover v. FlexmagIndustries, Inc., 4th Dist. No. 00CA49, 2002-Ohio-2404, ¶ 160. Evid.R. 704 simply provides that "[testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." We find that the trial court, in admitting Zeiher's affidavit testimony, did not abuse its discretion.
 {¶ 59} Appellant, in addition to questioning the enforceability of the contingent fee contract, makes the suggestion that appellee failed to fulfill his duties under the contract. As indicated above, the contract clearly and unambiguously provided that recovery would be set at the medical bills that would have been covered by Fortis. As a result of appellee's representation, those bills were paid in full.
 {¶ 60} The contract further provided that from any settlement or recovery appellant would be responsible for expenses incurred in the prosecution of the claim. Thus, there is no question that appellant was responsible for the payment of attorney fees.
 {¶ 61} As explained by appellee in a letter to appellant, there simply was no cause to pursue the action against Utz or Fortis any further. The fact is, appellant signed an *Page 14 
application for insurance that contained materially inaccurate information. And the insurance company, upon being informed that their agent had filled out the application and had known something about appellant's history of high cholesterol, timely paid appellant's medical bills in full. Appellee, in managing to get appellant's insurance reinstated and his medical bills paid, fully performed his duties and obligations under the contract.
 {¶ 62} As there is no genuine issue of material fact that remains to be litigated, appellee is entitled to judgment as a matter of law. Appellant's assignment of error is found not well-taken and the judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., Concur.
[1] Effective February 1, 2007, the Ohio Rules of Professional Conduct superseded the Code of Professional Responsibility. *Page 1